JEFFREY W. NAVIN ET AL. *v.* ESSEX SAVINGS BANK
ET AL.
(AC 24250)

Lavery, C. J., and Dranginis and Bishop, Js.

Argued January 8—officially released March 30, 2004

*John T. O'Reilly,* pro se, the appellant (plaintiff). *Kenneth R. Davis* filed a brief for the appellants (named plaintiffs et al.).

*John S. Bennet,* for the appellees (defendants).

*Opinion*

LAVERY, C. J. The plaintiffs, Jeffrey W. Navin, John F. Coyne and John T. O'Reilly, appeal from the summary judgment rendered by the trial court on each of their ten claims in favor of the defendants Essex Savings Bank (bank) and Douglas H. Olson.[1] On appeal, the plaintiffs claim that the court improperly (1) determined

---

[1] At all relevant times, Olson was the president of the bank.

that their claims were barred by the statute of limitations, (2) determined that their claims were barred by collateral estoppel and (3) granted the defendants' motion to disqualify their attorney. We agree with the court that the statute of limitations barred the plaintiffs' claims and, accordingly, affirm the judgment of the trial court.[2]

The following facts and procedural history are germane to our resolution of the plaintiffs' appeal. The origin of this case stems from certain land transactions that occurred in the 1980s. In 1986, Martin Frimberger gave a note to the bank in the amount of $300,000 and secured it with a mortgage on property he owned in Old Lyme. That mortgage was recorded in the town land records. Frimberger then gave two mortgages to two different groups to secure an unrelated debt. Those mortgages also were recorded in the town land records.

Frimberger then obtained a new mortgage loan in the amount of $650,000 and recorded it in the town land records on July 27, 1988. At that time, the holders of the two mortgages executed and delivered subordination agreements in favor of the bank. Those agreements were not recorded in the town land records until April 20, 1989.

In September, 1988, O'Reilly purchased Frimberger's property and conveyed lots to, among others, Kenneth Davis, Navin and Coyne. The bank issued purchase money mortgage loans to those buyers. O'Reilly also became involved in another subdivision project in the town of Lyme. Frimberger owned that property as well, and O'Reilly took title knowing that the property was subject to various mortgages. The plaintiffs subse-

---

[2] The parties conceded at oral argument that the statute of limitations issue was dispositive of the appeal and we agree. Even if we assume arguendo that the court improperly disqualified the plaintiffs' attorney, the claim still would be barred by the statute of limitations.

quently defaulted on the mortgages, and the bank commenced foreclosure proceedings.

The plaintiffs commenced a ten count action against the defendants on July 15, 2002. The plaintiffs set forth various causes of action, including fraud, misrepresentation, breach of contract, negligence and unfair trade practices. The crux of the complaint alleged that the bank, acting by and through its attorney, conspired to cloud the title to the plaintiffs' properties by improperly recording mortgages on the land records in April, 1989, causing the plaintiffs to default and thereby allowing the bank to foreclose on the properties.

As a preliminary matter, we set forth certain legal principles and the standard of review that govern our resolution of the plaintiffs' claim. "The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." *Wilson* v. *New Haven*, 213 Conn. 277, 279, 567 A.2d 829 (1989). "Our review of the trial court's decision to grant the . . . motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . Summary judgment may be granted where the claim is barred by the statute of limitations." (Citations omitted; internal quotation marks omitted.) *Torringford Farms Assn., Inc.* v. *Torrington*, 75 Conn. App. 570, 573, 816 A.2d 736, cert. denied, 263 Conn. 924, 823 A.2d 1217 (2003). On appeal, the burden is on the opposing party to demonstrate that the court's decision to grant the summary judgment motion was clearly erroneous. *Prescott* v. *Meriden*, 80 Conn. App. 697, 700, 836 A.2d 1248 (2003).

We note that in determining whether the court properly granted the defendants' motion for summary judg-

ment, we do not address or consider the underlying merits of the plaintiffs' claims. "Although a judgment based on the running of the statute of limitations bars the plaintiff from bringing an action to relitigate the claim within that jurisdiction, *it is not a judgment on the merits* and does not erase the plaintiff's claim." (Emphasis added.) *Advest, Inc.* v. *Wachtel,* 235 Conn. 559, 566, 668 A.2d 367 (1995). Thus, "the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) *Collum* v. *Chapin,* 40 Conn. App. 449, 451, 671 A.2d 1329 (1996). Additionally, although the plaintiffs have cited various statements that were made during prior litigation, we are limited to the events alleged in the complaint of *this case* and any facts alleged in their affidavit in opposition to the motion for summary judgment.

The plaintiffs alleged various causes of action against the defendants, namely, fraud, misrepresentation, negligence, breach of contract and unfair trade practices under CUTPA, General Statutes § 42-110a et seq. "Where . . . distinct causes of action arise from the same wrong, each is controlled by the statute of limitations appropriate to it." (Internal quotation marks omitted.) *Mac's Car City, Inc.* v. *DeNigris,* 18 Conn. App. 525, 530, 559 A.2d 712, cert. denied, 212 Conn. 807, 563 A.2d 1356 (1989). We therefore consider the various causes of action with respect to the appropriate statute of limitations.

General Statutes § 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." See also *Krondes* v. *Norwalk Savings Society,* 53 Conn. App. 102, 113, 728 A.2d 1103 (1999) (three year statute of limitations applicable to fraud, misrepresentation claims). General Statues § 52-584 provides in rele-

vant part that "[n]o action to recover damages for injury to the person, or to real or personal property, caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ." General Statutes § 42-110g (f) provides that an action alleging unfair trade practices under CUTPA "may not be brought more than three years after the occurrence of a violation . . . ." Finally, General Statutes § 52-576 (a) provides in relevant part that "[n]o action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

As alleged in the complaint, the plaintiffs became aware of actionable harm in the summer of 1989.[3] The complaint was not served on the defendants until July 15, 2002. Thus, it is evident that all of the applicable statutes of limitation had long since expired.

The plaintiffs argue that during the course of various litigation concerning the subject properties, including the foreclosure actions and a case brought in the United States District Court for the District Connecticut (federal case), the defendants had notice of those claims and, therefore, the primary purpose of the statute of limitations was satisfied.[4] We do not agree.

"A statute of limitation or of repose is designed to (1) prevent the unexpected enforcement of stale and

[3] The complaint stated in relevant part that "[d]uring the summer of 1989, the [p]laintiffs discovered that title to their respective properties had been clouded as the result of [the bank's] acts and omissions."

[4] The plaintiffs have raised the relation back doctrine in their brief. That doctrine, however, is inapplicable, as the plaintiffs have not attempted to amend the original complaint they filed in *this action*, but instead attempted to relate the present complaint back to previous foreclosure and federal cases.

fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." (Internal quotation marks omitted.) *DeLeo* v. *Nusbaum*, 263 Conn. 588, 596, 821 A.2d 744 (2003). Additionally, statutes of limitation promote the public policy of advancing the finality of litigation. See *Rosario* v. *Hasak*, 50 Conn. App. 632, 638, 718 A.2d 505 (1998). The fact that the defendants may have had notice did not render the statute of limitations inapplicable.

The plaintiffs also contend that the statute of limitations was tolled as a result of the federal case, which was filed on December 17, 1993. The federal case was brought pursuant to 18 U.S.C. § 1961 et seq., the Racketeer Influenced and Corrupt Organizations Act, against, among others, the bank. The plaintiffs included various pendent state law claims in the federal complaint. The federal case was dismissed at some point for lack of jurisdiction.[5]

Our Supreme Court has stated that "the pendency of the . . . action in federal court [does] not operate to suspend the running of the time limit set out in § 52-577. The plaintiffs attempt to avoid this conclusion by arguing that any state action which was filed while the federal action was pending 'would have been stayed.' We need not speculate whether a state action filed after the federal action 'would have been stayed.' *So long as the pendency of the prior action does not prevent*

---

[5] The parties did not provide this court with an official or certified document from the federal court dismissing the federal case; instead, the parties stated at oral argument that the federal case had been dismissed.

*enforcement of the remedy sought in the later action, the pendency of the first action will not toll the statute of limitations for the second action."* (Emphasis added.) *Perzanowski* v. *New Britain*, 183 Conn. 504, 506, 440 A.2d 763 (1981).

On the basis of *Perzanowski*, we conclude that the filing of the federal case did not toll the applicable statute of limitations relative to the state law claims.[6]

Last, the plaintiffs argue that the defendants engaged in a continuing course of conduct by seeking deficiency judgments on the foreclosed properties. We are not persuaded.

"When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. . . . [I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . .

"The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits

---

[6] We point out that at oral argument the plaintiffs represented that the federal case had concluded either at the end of 1998 or in early 1999. Counsel for the defendants stated that the federal case was dismissed in 1996. Thus, it would appear that even if the federal action tolled that statute of limitations, all of the plaintiffs' claims, with the exception of the breach of contract claim, would still be time barred by the three year statute of limitations.

are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. . . . For example, the doctrine is generally applicable under circumstances where [i]t may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of [action] to terminate before allowing the repose section of the statute of limitations to run . . . ." (Citations omitted; internal quotation marks omitted.) *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 295–96, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995).

The plaintiffs alleged that they knew of the defendants' improper conduct in the summer of 1989 but did not file the present action until approximately thirteen years later. There is no evidence of a special relationship or a duty owed by the defendants to the plaintiffs after the summer of 1989. Additionally, the plaintiffs, in their complaint, pinpointed the date of the harm to the summer of 1989. Nothing in the record supports their claim of a continuing course of conduct that would toll the statute of limitations. The court's decision, therefore, was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.