IRENE D. BELLEMARE *v.* WACHOVIA
MORTGAGE CORPORATION
(AC 26067)

Bishop, DiPentima and Peters, Js.

594

Argued October 26, 2005—officially released April 4, 2006

*Eddi Z. Zyko*, for the appellant (plaintiff).

*Thomas A. Kaelin*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, Irene D. Bellemare, appeals from the summary judgment rendered by the trial court on all counts of her complaint in favor of the defendant, Wachovia Mortgage Corporation. In response to competing motions for summary judgment filed by the parties, the court concluded that General Statutes § 52-577 barred both a claim under General Statutes § 49-8 and a common-law claim for breach of the implied covenant of good faith and fair dealing, and that a claim of a violation of the Connecticut Unfair Trade Practices Act (CUTPA), pursuant to General Statutes § 42-110a et seq., was barred by the statute of limitations contained in that act. We affirm the judgment with respect to the plaintiff's claims under § 49-8 and CUTPA, and reverse the judgment with respect to her common-law claim alleging a breach of the implied covenant of good faith and fair dealing.

The following undisputed facts and procedural history are germane to our discussion of the issues at hand. On or about May 31, 1998, William A. Bellemare and the plaintiff sold their home at 225 Citizens Avenue, Waterbury.[1] The premises were subject to a mortgage held by the defendant. On June 18, 1998, the plaintiff's counsel sent the defendant a check in the amount of $31,729.34 as payment in full of the mortgage loan balance due to the defendant. The defendant received the sum in satisfaction of the loan, but failed to execute and deliver a release of the mortgage to the plaintiff.

In April, 2003, the plaintiff, upon discovering that the release had not been recorded in the land records, demanded a release of the mortgage and damages in the amount of $5000 pursuant to § 49-8. The defendant

---

[1] On May 31, 1998, William A. Bellemare gave the plaintiff power of attorney.

provided the requested release, dated May 13, 2003,[2] but declined to pay the sum of $5000. On December 22, 2003, the plaintiff filed a three count complaint against the defendant. The complaint, which was subsequently amended, sought damages (1) pursuant to § 49-8, (2) under CUTPA and (3) for breach of an implied covenant of good faith and fair dealing.

In its answer, the defendant acknowledged that the loan had been paid in full, but maintained that a timely release of mortgage and a duplicate release had been sent to the plaintiff's counsel. The defendant also raised as special defenses to all counts that the claims were barred by applicable statutes of limitation and filed a motion for summary judgment on all counts on the basis of these special defenses.

The court granted the defendant's motion for summary judgment on the grounds asserted. For the CUTPA count, the court relied on CUTPA's three year statute of limitations. See General Statutes § 42-110g (f). As to the remaining counts, the court concluded that the plaintiff's claims sounded in tort and, therefore, were barred by § 52-577, the statute of limitations applicable generally to tort actions.[3]

On appeal, the plaintiff raises two broad issues, one regarding the applicable statutes of limitation and the other claiming that the statutes of limitation were tolled by the continuing course of conduct doctrine. As to the first, she asserts that the court improperly determined that her claims were time barred. Specifically, she argues that the court incorrectly determined that (1) the three year statute of limitations set forth in § 42-110g (f) bars her CUTPA claim, (2) the three year statute

---

[2] The release was recorded on July 15, 2003.

[3] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

of limitations set forth in § 52-577 bars her claim under § 49-8 and (3) § 52-577 also bars her claim of breach of the implied covenant of good faith and fair dealing. Second, she asserts that even if her claims fall within the statutes of limitation relied on by the court, the limitation period set forth in each statute was tolled under the continuing course of conduct doctrine until the release of the mortgage was provided on May 13, 2003.

As a preliminary matter, we set forth the standard of review of a trial court's ruling on a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 6–7, 882 A.2d 597 (2005). We discuss each count separately.

## I

First, we consider the plaintiff's claim that the court improperly applied the three year statute of limitations set forth in § 52-577 to the first count of her complaint.

In the first count of the plaintiff's complaint, she alleged that the defendant violated § 49-8 by failing to provide a release of mortgage subsequent to its receipt of the June, 1998 payoff of the plaintiff's mortgage debt. She claims damages in the statutory amount of $5000. In response to the complaint, the defendant argued that the claim was barred by the three year statute of limitations pursuant to § 52-577, the tort statute of limitations, and subsequently filed a motion for summary judgment on that ground. The court agreed and rendered summary judgment in favor of the defendant on this count of the plaintiff's complaint.

On appeal, the plaintiff challenges the court's determination that the tort statute of limitations applies to a claim seeking relief pursuant to § 49-8. The plaintiff asserts that a cause of action brought pursuant to § 49-8 does not sound in tort, but rather in contract, and that since the statute of limitations applicable to contract actions, General Statutes § 52-576, permits suit within six years of the alleged breach, her claim is not time barred.[4] We disagree.

The issue of whether an action brought pursuant to § 49-8 sounds in tort or contract presents a legal question of first impression for this court. Therefore, our review is plenary. *Starks* v. *University of Connecticut*, 270 Conn. 1, 8, 850 A.2d 1013 (2004). As the plaintiff's claim requires us to address the question of whether a claim brought pursuant to § 49-8 sounds in tort or contract, we note at the outset the doctrinal distinction between these two causes of action. "The fundamental difference between tort and contract lies in the nature of the interests protected. . . . The duties of conduct which give rise to [tort causes of action] are imposed

---

[4] General Statutes § 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. . . . Contract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of parties manifesting consent, and are owed only to the specific individuals named in the contract. Even as to these individuals, the damages recoverable for a breach of the contract duty are limited to those reasonably within the contemplation of the defendant when the contract was made, while in a tort action a much broader measure of damages is applied." W. Prosser, Torts (3d Ed. 1964) § 93, p. 634.

Here, although the relationship between the plaintiff and the defendant arose from the mortgage document, the duty of conduct that gave rise to the present action is imposed by law, pursuant to § 49-8. Thus, although it could be argued that the relationship between the parties suggests a contract cause of action, it is the nature of the relief sought and not the nature the parties' relationship that determines the character of the action. Thus, for example, a professional can be sued in tort for the negligent breach of a duty even though the duty arises from a contract. See *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 199 Conn. 683, 688, 508 A.2d 438 (1986). Because, in this instance, the relief sought is provided by statute and flows from a statutory duty, we conclude that an action founded on § 49-8 sounds in tort. It is not material to our conclusion that the plaintiff also feasibly could bring a claim under CUTPA or pursuant to a theory of implied contract. As this court has stated, "[w]here . . . distinct causes of action arise from the same wrong, each is controlled by the statute of limitations appropriate to it." (Internal quotation marks omitted.) *Navin* v. *Essex Savings Bank*, 82 Conn. App. 255, 259, 843 A.2d 679, cert. denied, 271 Conn. 902, 859 A.2d 563 (2004).

Our conclusion that the nature of the relief sought and not the character of the parties' relationship controls finds support in *Gazo* v. *Stamford*, 255 Conn. 245, 765 A.2d 505 (2001), in which our Supreme Court made precisely that point. In *Gazo*, the court held that when determining whether a statutory action lies in tort or contract, "we look beyond the language used in the complaint to determine what the plaintiff really seeks." Id., 263. In *Gazo*, a fair reading of the complaint revealed that, in all counts, the plaintiff sought damages for a personal injury allegedly caused by the negligence of the defendants. Id., 264. Thus, although the plaintiff attempted to assert a contract basis to reach an independent contractor of the defendant tenant, the court, on review, treated the claim as one sounding in negligence because, in all respects, the plaintiff sought compensation for injuries due to other parties' negligence. Id., 266. In affirming the decision of the trial court, our Supreme Court stated that "[w]hen the claim is one for personal injury, the decision usually has been that the gravamen of the action is the misconduct and the damage, and that is essentially one of tort, which the plaintiff cannot alter by his pleading." (Internal quotation marks omitted.) Id., 263. Thus, in *Gazo*, our Supreme Court determined that the plaintiff had brought a negligence claim, notwithstanding the fact that it was premised on a contractual relationship between the defendant tenant and an independent contractor, because of the nature of the relief sought.

Although the pleaded facts differ between the case at hand and *Gazo*, the principle enunciated in *Gazo* is germane to our analysis. As noted, in all counts in *Gazo* the plaintiff sought damages for personal injuries based on allegations of negligence. Thus, in *Gazo*, the relief sought by the plaintiff was the same in all counts. Unlike in *Gazo*, the plaintiff in this case brought a multicount complaint in which she sought distinct relief in each

count. In the first count, she sought statutory damages for the defendant's alleged violation of § 49-8.[5] Pursuant to § 49-8 (c), "[t]he mortgagee . . . [must] execute and deliver a release within sixty days from the date a written request for a release of such encumbrance . . . was sent to such mortgagee . . . ." As a penalty for violating this provision, § 49-8 (c) provides in relevant part that "[t]he mortgagee . . . shall be liable for damages to any person aggrieved at the rate of two hundred dollars for each week after the expiration of such sixty days up to a maximum of five thousand dollars or in an amount equal to the loss sustained by such aggrieved person as a result of the failure of the mortgagee . . . to execute and deliver a release, whichever is greater, plus costs and reasonable attorney's fees."

The plaintiff claims that the defendant violated § 49-8 by failing to provide a mortgage release within the prescribed statutory period. Such a claim invokes the statutory requirement that a mortgage release be issued within sixty days of the request and seeks relief as provided by law. As our Supreme Court has stated, "[a]n action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law." *Gazo* v. *Stamford*, supra, 255 Conn. 263; see also *Tenneco Oil Co.* v. *Clevenger*, 363 So. 2d 316, 318 (Ala. Civ. App. 1978); *Pintor* v. *Ong*, 211 Cal. App. 3d 837, 841–42, 259 Cal. Rptr. 577 (1989).

That this is an action sounding in tort also is indicated by the fact that the complaint alleges a violation of the statute and seeks to recover damages for a duty annexed to the mortgage by law without regard to any

---

[5] In the second count, the plaintiff sought damages pursuant to CUTPA, and in the third count, she sought compensatory damages under a theory of implied contract. In sum, in this case, unlike in *Gazo*, the plaintiff not only asserted a different basis for recovery, but she sought distinct and nonoverlapping damages in each count.

expression of the contracting parties. Additionally, even though § 49-8 allows the aggrieved party to recover actual damages, the statute does not require that the aggrieved party suffer actual damages in order to recover. In that light, it is apparent that the right vested in mortgagors by § 49-8 is to exact a penalty on a mortgagee who fails, on proper demand, to provide a release of mortgage within the statutorily prescribed time. Because the wronged party is entitled to an award of damages irrespective of whether there has been a showing of actual damages, the statute best can be understood as a coercive means to penalize those who violate its prescriptions. Because § 49-8 authorizes the court to compensate a plaintiff for the breach of this legal duty through an award of either actual or punitive damages, it fits squarely within the general definition of a tort action, as one founded on the violation of a statutory duty. *Curtis* v. *Loether*, 415 U.S. 189, 195–97, 94 S. Ct. 1005, 39 L. Ed. 2d 260 (1974).

In sum, the requirements of § 49-8 are not merely steps in the footprints of a mortgagee's common-law obligation to provide a release of mortgage after payment of the debt. To the contrary, the statute imposes specific requirements on the mortgagor regarding the manner and timing of notice and demand to the mortgagee, and it provides for a specific time period for the mortgagee to provide a release. As we have stated, the unexcused violation of a legislative enactment, or a law, is a tort. See *Federal Deposit Ins. Corp.* v. *Citizens Bank & Trust Co.*, 592 F.2d 364, 369 (7th Cir.), cert. denied, 444 U.S. 829, 100 S. Ct. 56, 62 L. Ed. 2d 37 (1979); 2 Restatement (Second), Torts § 288B (1965).

Our conclusion that an action pursuant to § 49-8 sounds in tort finds further support in the legislative history and statutory scheme of the statute. The precursor to § 49-8 was enacted in 1869, with the passage of "An Act In Addition to An Act Concerning Lands." The

act sought to provide an additional statutory remedy to complement the existing common-law remedy. See *Skorpios Properties, Ltd.* v. *Waage,* 172 Conn. 152, 156, 374 A.2d 165 (1976). The original act stated that "upon the payment and satisfaction of any mortgage, it shall be the duty of the mortgagee therein, or of the person by law authorized to release the same, to execute and deliver a proper release deed thereof, and upon the *wilful neglect or refusal* so to do for thirty days . . . shall forfeit and pay to any person aggrieved, the sum of five dollars for each week of such *refusal or neglect* . . . ." (Emphasis added.) Public Acts 1869, c. 16. The legislature in 1915 amended the statute; Public Acts 1915, c. 164, § 5; requiring that the mortgagee need only "fail . . . to" provide the release to be subject to the penalty. See 22 S. Proc., Pt. 2, 1979 Sess., p. 446, remarks of Senator Salvatore C. DePiano. The use of the word neglect denotes a cause of action that sounds in tort because the word has a common meaning, which is "the act or failure to act that is prominent in common law negligence, i.e., the failure to perform a legal duty." *White* v. *Burns,* 213 Conn. 307, 320, 567 A.2d 1195 (1990) (noting that words neglect and default connote cause of action in tort). Our Supreme Court has acknowledged that "[s]tatutory language is to be given its plain and ordinary meaning unless such meaning is clearly at odds with the legislative intent." (Internal quotation marks omitted.) Id. To the extent that the original purpose for which § 49-8 was enacted remains today, the language used in the original legislation provides support for our conclusion that a cause of action brought pursuant to § 49-8 sounds in tort and not in contract.

We recognize, however, that acknowledging the ordinary meaning of words used in the original statute does not in and of itself end our inquiry. We also must "construe a statute as a whole, [and] not only must every word be considered, but words in a statute must be put

in the context of the whole statute, together with its legislative history, its purpose and the circumstances surrounding its enactment." Id., 321.

There is nothing in the legislative history of § 49-8 that would indicate that the legislature did not intend to accomplish the result to which the natural meaning of its words leads. As we read it, the history of the evolution of the existing statute is barren of suggestion that the legislature had meant to do less than its words signify on their face. In fact, pertinent recent legislative history supports our conclusion that the statutory scheme regarding mortgage releases continues to exist to provide an additional remedy in tort. For instance, in 1986, during the hearings to amend § 49-8a, the cousin of § 49-8, Representative William L. Wollenberg noted the "constant problem in the real estate [world] with mortgage releases . . . . When it comes time to sell a house or any real estate a release of that mortgage is necessary. . . . What has developed is an extreme difficulty in getting out of state mortgage companies and financial people . . . . [t]o . . . give you the pay off, let alone a formal release of the mortgage for the land records." 29 H.R. Proc., Pt. 11, 1986 Sess., pp. 4167–68.

In 1989, § 49-8 was amended in Public Acts 1989, No. 347, § 18, "An Act Concerning Mortgage Brokers and Mortgages Servicers and Establishing a Home Buyer's Bill of Rights," which, inter alia, increased the penalty due from a mortgagee who failed to provide a timely release of mortgage to a mortgagor. See 32 H.R. Proc., Pt. 29, 1989 Sess., pp. 10,312–20; 32 H.R. Proc., Pt. 30, 1989 Sess., pp. 10,408–39. Then in 1995, § 49-8 was amended as part of "An Act Concerning Release or Satisfaction of a Mortgage Lien." Public Acts 1995, No. 95-102, § 1. The stated purpose of "An Act Concerning Release or Satisfaction of a Mortgage Lien" was to "revise the procedure for the release or satisfaction of a mortgage lien by *increasing incentives to assure*

*lenders comply with laws* requiring releases and by *enhancing the remedies* and options available to mortgagors and attorneys when lenders fail to comply." (Emphasis added.) Raised Committee Bill No. 990, January Sess. 1995, p. 9. Accordingly, the legislative history and statutory scheme of § 49-8 establish that the statute was enacted and continues not only to protect property owners, but it has a more general purpose of enhancing the marketability of titles and facilitating economic intercourse in deeded transactions. See id.; Conn. Joint Standing Committee Hearings, Banks, 1979 Sess., pp. 283–84; 29 H.R. Proc., Pt. 11, 1986 Sess., pp. 4166–68.

Because we have concluded that the violation of the statutorily imposed duties enumerated in § 49-8 constitutes a tort, the defendant was entitled to summary judgment with respect to the plaintiff's claim for recovery under § 49-8 because the plaintiff's claim pursuant to § 49-8 was untimely. As we have noted, the statute of limitations governing actions in tort, § 52-577, requires suit within three years of the act complained of. As alleged in the complaint, the violation of § 49-8 occurred in June, 1998, or a reasonable time thereafter, when the defendant failed to provide the release of mortgage. The plaintiff commenced this action in December, 2003, five years later, more than two years after the statute of limitations had expired.

II

Next, we address the plaintiff's claim that the court improperly applied the three year statute of limitations provided by § 42-110g (f) to the second count of her complaint. In this count, the plaintiff alleged that the defendant's failure to provide the release of mortgage on receipt of the June, 1998 payoff constituted an unfair trade practice in violation of CUTPA. Whether a party's claim is barred by the statute of limitations is a question of law that requires our plenary review. *Florian* v.

*Lenge,* 91 Conn. App. 268, 279, 880 A.2d 985 (2005); see *Navin* v. *Essex Savings Bank,* supra, 82 Conn. App. 258.

The court granted the defendant's motion for summary judgment, citing the statute of limitations contained in CUTPA, § 42-110g (f), and this court's decision in *Navin* v. *Essex Savings Bank,* supra, 82 Conn. App. 255. The court held that the plaintiff's claim was untimely because it was not brought within the required three year time period. On appeal, the plaintiff argues that the court improperly relied on *Navin* as the basis of its rejection of her assertion that the statute of limitations for claims under § 49-8 should apply to her CUTPA claim. We disagree and hold that CUTPA claims are governed by the statute of limitations found in § 42-110g (f).

The plaintiffs in *Navin* brought various causes of action, including a claim under CUTPA, in connection with the defendant bank's foreclosure of certain mortgages held on the plaintiffs' properties. This court held that the plaintiffs' action was untimely because it had not been brought until approximately four years after the alleged unfair trade practice occurred, more than one year after the statute of limitations as provided by § 42-110g (f)[6] had expired. Id., 260.

Here, the court's reliance on *Navin* was proper. Section 42-110g (f) applies to all claims brought under CUTPA without regard to the nature of the underlying

---

[6] CUTPA provides a statutory cause of action for any person who has suffered an ascertainable loss of money or property as a result of an unfair trade practice. General Statutes §§ 42-110a and 42-110b. In General Statutes § 42-110g (f), the legislature provided such cause of action with a specific statute of limitations and provided that an action alleging unfair trade practices under CUTPA "may not be brought more than three years after the occurrence of a violation . . . ." General Statutes § 42-110g (f). Pursuant to the clear and unambiguous language of § 42-110g (f), no cause of action can be maintained under CUTPA if brought more than three years after the unfair practice occurs.

unfair trade practice that has been alleged. Assuming the truth of the plaintiff's complaint, the CUTPA violation occurred in June, 1998, or a reasonable time thereafter, when the defendant failed to provide the release of mortgage upon satisfaction of the mortgage debt. Because the plaintiff did not commence the present action until December, 2003, more than three years after the alleged CUTPA violation, we hold that the claim was untimely and that the court properly granted the defendant's motion for summary judgment on the plaintiff's CUTPA claim.

### III

The plaintiff argues, however, that the statutes of limitation implicated in all counts were tolled under the continuing course of conduct doctrine until the required release of the mortgage was provided on May 12, 2003.

We need not reach the merits of this claim because the plaintiff did not raise it in her pleadings by way of a reply to the special defenses,[7] but instead, asserted it for the first time in a pleading filed in opposition to the defendant's motion for summary judgment, in which the plaintiff made a cross motion for summary judgment. Nevertheless, we respond substantively to the issue regarding the first and second counts[8] because, however imperfectly, the plaintiff placed the issue before the court and, in this instance, we believe it is just to reach the claim.

As to the merits of this claim, we find no support in the record, as to both the CUTPA and statutory counts,

---

[7] Pursuant to Practice Book § 10-57, a "[m]atter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply. . . ."

[8] In light of our conclusion that the third count is not time barred, we need not assess the application of the continuing course of conduct exception to the third count.

for the plaintiff's assertion that the applicable statutes of limitation were tolled by the defendant's continuing course of conduct. It is axiomatic that "[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. . . . [I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) *Navin* v. *Essex Savings Bank*, supra, 82 Conn. App. 262. "[A] precondition for the operation of the continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff. . . . Second, there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. . . . [T]hat continuing wrongful conduct may include acts of omission as well as affirmative acts of misconduct . . . ." (Internal quotation marks omitted.) *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 161, 795 A.2d 572 (2002). Furthermore, "[t]he doctrine of continuing course of conduct as used to toll a statute of limitations is better suited to claims where the situation keeps evolving after the act complained of is complete . . . ." *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 297–98, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995).

Here, although the plaintiff 's complaint alleged that the defendant's failure to provide a release of mortgage

was a breach of the defendant's duty, she has failed to satisfy the second requirement, that of the existence of a special relationship between herself as mortgagor and the defendant as mortgagee, following the satisfaction of the mortgage debt on June 18, 1998. Because the "payment or tender of the mortgage obligation in full extinguishes the mortgage . . . the mortgage is no longer a lien on the real estate in question . . . ." Restatement (Third) Property, Mortgages § 6.4, comment (a), p. 423 (1997). Also, there is no evidence that the alleged violation continued to evolve after the act complained of was complete. Indeed, the only subsequent act of the defendant that the plaintiff claims constituted a continuing course of conduct was the defendant's continued failure to execute and deliver the release. Although it may be true that the defendant never was released of its contractual and statutory obligations to provide a release of mortgage once the debt was satisfied, its failure to provide the appropriate release constituted a single omission and not an ongoing or recurring wrongful act.

## IV

Finally, the plaintiff claims that the court improperly held that count three of her complaint, in which she alleged a breach of the implied covenant of good faith and fair dealing, was barred by the tort statute of limitations, § 52-577.

The court held that because count three incorporated the allegations of the statutory claim pursuant to § 49-8, in which the plaintiff had alleged a tort cause of action, count three also was barred by the tort statute of limitations. The plaintiff argues, however, that the mortgage deed is prima facie evidence of a contract. She further argues that to the extent that the contract contains implied covenants, such covenants may be enforced by an action for a breach of contract, and a cause of action brought to enforce said covenants

would be governed by § 52-576, the contract statute of limitations. We agree.

As our Supreme Court stated in *Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 880 A.2d 106 (2005), a claim brought pursuant to a contract, alleging a breach of the implied covenant of good faith and fair dealing, sounds in contract because "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. . . . To constitute a breach of [that duty], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (Citation omitted; internal quotation marks omitted.) Id., 333–34. Such a claim is therefore subject to the six year contract statute of limitations as provided in § 52-576.

In the case at bar, the plaintiff's complaint alleged that the breach of the covenant of good faith and fair dealing accrued in June, 1998, when the defendant failed to provide the release of mortgage. The plaintiff commenced this action in December, 2003, within the six year statute of limitations, as stated in § 52-576.

Accordingly, the court improperly concluded that the allegations of the third count, alleging a breach of the covenant of good faith and fair dealing, were barred by the statute of limitations.

The judgment is affirmed as to counts one and two and reversed as to count three and the matter is remanded for further proceedings in accordance with law.

In this opinion DiPENTIMA, J., concurred.

PETERS, J., concurring and dissenting. This case concerns the timeliness of a complaint by a mortgagor that

her mortgagee improperly failed to provide a timely release of her mortgage. I agree with the majority that the plaintiff waited too long to pursue the claim stated in the second count of her complaint, in which she sought relief under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. That claim is expressly barred by the CUTPA statute of limitations, General Statutes § 42-110g (f), and is not saved by the continuing course of conduct doctrine. I also agree with the majority that the plaintiff stated a timely claim for relief in the third count of her complaint, in which she sought a remedy for breach of the covenant of good faith and fair dealing that is an implied clause in Connecticut contracts. As a claim for breach of contract, that claim is governed by the contracts statute of limitations, General Statutes § 52-576. It follows that the plaintiff is not time barred from relief if she can prove the damages caused by the defendant's delay in providing her the mortgage release to which she was entitled.

I disagree, however, with the majority's conclusion that the claim stated in the first count of the plaintiff's complaint, in which she sought the statutory remedy stated in General Statutes § 49-8, is no longer sustainable because it is governed by the three year tort statute of limitations stated in General Statutes § 52-577. In my view, the fact that the legislature has provided an additional remedy for a breach of contract does not convert a contract action into a tort action.

I recognize that, as a matter of tort law, statutory remedies often are characterized as penal. When that characterization fits, a tort statute of limitations unquestionably determines the appropriate measure of the time span during which an injured person may pursue a claim at law.

The law of contracts is, however, more nuanced. As does the law of contracts generally, our case law recog-

nizes that contracting parties may decide on a specified monetary remedy for an unexcused failure to perform a contractual obligation. Whether such a stipulated remedy is enforceable depends on whether it was intended to be punitive or compensatory. As our Supreme Court recently has reiterated, "[a] contractual provision for a penalty is one the prime purpose of which is to prevent a breach of the contract by holding over the head of a contracting party the threat of punishment for a breach. . . . A provision for liquidated damages, on the other hand, is one the real purpose of which is to fix fair compensation to the injured party for a breach of the contract. In determining whether any particular provision is for liquidated damages or for a penalty, the courts are not controlled by the fact that the phrase liquidated damages or the word penalty is used. Rather, that which is determinative of the question is the intention of the parties to the contract. Accordingly, such a provision is ordinarily to be construed as one for liquidated damages if three conditions are satisfied: (1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract. [*Berger* v. *Shanahan*, 142 Conn. 726, 731–732, 118 A.2d 311 (1955)]." (Internal quotation marks omitted.) *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, 273 Conn. 296, 306–307, 869 A.2d 1198 (2005); see also 3 E. Farnsworth, Contracts (3d Ed. 2004) § 12.18, p. 305.

Applying these principles to the circumstances of this case, I am persuaded that, under the law of contracts,

there would have been no jurisprudential obstacle to the enforceability of a clause in a mortgage requiring a mortgagee to pay $5000 in the event of a substantial unexcused delay in releasing a mortgage after payment of an underlying mortgage debt of $31,729.34. The clause would have met each of the criteria that identify a liquidated damages clause. The timeliness of an action to enforce the clause would be governed by the terms of the contracts statute of limitations.

As a matter of economic reality, however, mortgages rarely, if ever, contain provisions that sanction the failure to release a mortgage in timely fashion. By way of contrast, standard form mortgages frequently include provisions that add late fees to a mortgagor's indebtedness if periodic payments are not made as scheduled. Surely, a mortgagee's action to recover the amount of the unpaid debt, including late fees, is governed in its entirety by the contract statute of limitations.

The question then becomes whether it is proper to construe the statutory remedy provided to mortgagors by § 49-8 as a statutory provision for a liquidated damages clause or a penalty. Our legislature has elsewhere described statutory remedies as liquidated damages. See, e.g., General Statutes §§ 7-349,[1] 13a-70,[2] 31-52[3] and 42a-2-718.[4] It seems to me, therefore, that it is not a

[1] General Statutes § 7-349 provides: "Any officer who, in violation of any provision of this chapter, expends or causes to be expended any money of such town, except for the purpose of paying judgments rendered against such town, shall be liable in a civil action in the name of such town, and the amount so drawn from the treasury of such town shall be liquidated damages in such action against any such officer."

[2] General Statutes § 13a-70 provides in relevant part that "any person interested . . . may execute a penal bond with surety . . . binding upon the obligors therein to the full amount of such penal sum, as liquidated damages . . . ."

[3] General Statutes § 31-52 (d) provides for statutory recovery of liquidated damages for "wages paid to any employees employed in violation of this section or section 31-52a . . . ."

[4] General Statutes § 42a-2-718 (2) provides: "Where the seller justifiably withholds delivery of goods because of the buyer's breach, the buyer is

given that any and every Connecticut statutory remedy is necessarily penal in nature. Instead, the issue is one of statutory construction.

The principles that govern statutory construction are well established. General Statutes § 1-2z provides that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." If the meaning of the statute is not plain and unambiguous, then "we [also] look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter for [interpretative guidance]." (Internal quotation marks omitted.) *State* v. *Boyd*, 272 Conn. 72, 76, 861 A.2d 1155 (2004).

On its face, § 49-8 describes a remedy for the failure of a "mortgagee or a person authorized by law to release the mortgage" to "execute and deliver a release . . . [u]pon the satisfaction of the mortgage . . . ." The statute requires the mortgagee to "execute and deliver a release within sixty days from the date a written request for a release of such encumbrance . . . ." General Statutes § 49-8 (c). It provides that "[t]he mortgagee or plaintiff shall be liable *for damages* to any person

entitled to restitution of any amount by which the sum of his payments exceeds (a) the amount to which the seller is entitled by virtue of terms liquidating the seller's damages in accordance with subsection (1), or (b) in the absence of such terms, twenty per cent of the value of the total performance for which the buyer is obligated under the contract or five hundred dollars, whichever is smaller."

aggrieved at the rate of two hundred dollars for each week after the expiration of such sixty days up to a maximum of five thousand dollars *or in an amount equal to the loss sustained by such aggrieved person* as a result of the failure of the mortgagee . . . to execute and deliver a release, whichever is greater, plus costs and reasonable attorney's fees." (Emphasis added.) General Statutes § 49-8 (c).

With deference, this language strikes me as indicative of a legislative intent to liquidate damages, i.e., "to fix fair compensation to the injured party for a breach of the contract." (Internal quotation marks omitted.) *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, supra, 273 Conn. 306. The obligation to provide a release upon receipt of full satisfaction of a mortgage debt arises out of the contractual obligation that the mortgage memorializes. Even without the statute, a mortgagor has a common-law cause of action in the nature of a breach of contract if the agreement contained in the mortgage expressly or impliedly so provides. See *Skorpios Properties, Ltd.* v. *Waage*, 172 Conn. 152, 154–56, 374 A.2d 165 (1976); see also *Webster Bank* v. *Oakley*, 265 Conn. 539, 547, 830 A.2d 139 (2003) (construction of mortgage deed governed by same rules of interpretation that apply to contracts generally), cert. denied, 541 U.S. 903, 124 S. Ct. 1603, 158 L. Ed. 2d 244 (2004).[5]

My interpretation of the statute as providing a remedy for breach of contract is buttressed by the statute's express linkage of the stipulated monetary remedy to the mortgagor's right alternatively to recover *"an amount equal to the loss"* actually suffered by the mortgagor. General Statutes § 49-8 (c). Surely, pursuit of actual damages, with or without reliance on the implied

---

[5] Unfortunately, our appellate record does not include a copy of the mortgage.

contractual covenant of good faith and fair dealing, is governed by the contracts statute of limitations. It strikes me as odd to interpret a statute in such a way that two different statutes of limitation govern one and the same sentence.

Furthermore, contrary to the majority, I am persuaded that *Gazo* v. *Stamford*, 255 Conn. 245, 765 A.2d 505 (2001), supports the position of the plaintiff in this case. In *Gazo*, our Supreme Court held that, to determine whether a litigant has pleaded a contracts claim, "we look beyond the language used in the complaint to determine what the plaintiff really seeks." Id., 263. The court concluded that the plaintiff in that case had not really stated a claim as a third party beneficiary of a contract because the allegations in the complaint "sound[ed]" in tort. Id., 264. It was a personal injury action. The plaintiff sought to recover for his physical and mental pain and suffering, lost wages and medical bills resulting from a fall on ice and snow that he attributed to negligent performance of a contractor's snow removal obligations. Id., 264–65.

Unlike *Gazo*, this is a contract action and *not* a personal injury action. The gravamen of *this* complaint is that the plaintiff seeks compensation for the defendant's failure to perform its obligation to provide a timely mortgage release. The duty to provide a release is inextricably related to the contractual terms of the underlying mortgage, which, for example, may or may not permit prepayment of the mortgage debt. See, e.g., *Dugan* v. *Grzybowski*, 165 Conn. 173, 176, 332 A.2d 97 (1973); see also *Skorpios Properties, Ltd.* v. *Waage*, supra, 172 Conn. 154–55.

Respectfully, I would reverse the summary judgment not only with respect to the third count of the plaintiff's complaint but also with respect to the first count.