******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PMG LAND ASSOCIATES, L.P. *v.* HARBOUR LANDING
CONDOMINIUM ASSOCIATION, INC., ET AL.
(AC 37965)

DiPentima, C. J., and Beach and Sheldon, Js.*

*Argued December 2, 2016—officially released May 2, 2017*

(Appeal from Superior Court, judicial district of New
Haven, Holden, J., [motion to dismiss]; Wilson, J.
[motion for summary judgment].)

*Scott M. Maser*, for the appellant (plaintiff).

*Laura Pascale Zaino*, with whom was *Joshua M. Auxier*, for the appellees (defendants).

*Opinion*

BEACH, J. The plaintiff, PMG Land Associates, L.P., appeals from the judgment of the trial court granting the motion for summary judgment filed by the defendants, Harbour Landing Condominium Association, Inc., David Potter, Vincent DeLauro, and Margareth Butterworth. On appeal, the plaintiff contends that the court improperly held that the action was barred by the applicable statute of limitations. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. The plaintiff and the defendants owned adjacent properties in New Haven. The defendants' land comprised phases I and II of the Harbour Landing condominium complex. Contiguous land owned by the plaintiff was planned to be phases III, IV, and V of the development.[1] In 2000, the plaintiff placed the land intended for phases III, IV, and V on the market. In response, the defendants commenced an action seeking a prescriptive easement over portions of the plaintiff's property (defendants' 2001 action) and, in connection with that action, recorded a lis pendens applicable to all of the plaintiff's property slated for development. The plaintiff subsequently sought a discharge of the lis pendens. On March 26, 2003, the court, *Hon. Robert I. Berdon*, judge trial referee, granted relief to the plaintiff as to certain portions of the land, and denied it as to others. On January 28, 2004, the court modified its 2003 decision to further limit the scope of the defendants' lis pendens. On May 28, 2004, as will be explained, the defendants' 2001 action, which provided the basis for the lis pendens, was dismissed.

Meanwhile, in October, 2003, while the defendants' 2001 action seeking a prescriptive easement was pending, the plaintiff initiated an action against the defendants seeking to quiet title; it also alleged slander of title and tortious interference with a contract (plaintiff's 2003 action). The plaintiff alleged that the lis pendens filed by the defendants was false and was intended to interfere with the plaintiff's ability to market and sell its property, and that, in an attempt to interfere with the plaintiff's recently signed agreement for sale, the defendants had failed to remove the lis pendens in accordance with Judge Berdon's order. The plaintiff also alleged that the defendants interfered with the plaintiff's ability to access its property by changing the access codes on the gates surrounding the property. In April, 2004, the parties informed the court that both the defendants' 2001 action and the plaintiff's 2003 action had been settled. The court, accordingly, ordered the parties to withdraw both cases on or before May 27, 2004. The required withdrawals never were filed, and the court dismissed the defendants' 2001 action on May 28, 2004, and the plaintiff's 2003 action on June 30, 2004.

Approximately six months later, in November, 2004, the plaintiff filed a second complaint against the defendants. The plaintiff alleged (1) statutory vexatious litigation, (2) common-law vexatious litigation, and, again, (3) tortious interference with a contract. The factual allegations in the second complaint largely mirrored the allegations in the plaintiff's 2003 action, with the additional allegation that the defendants had filed a zoning appeal against the plaintiff's buyer, The Christopher Companies, Ltd. (Christopher Companies), in 2004, in another attempt to interfere with the plaintiff's sale of the property. The plaintiff subsequently failed to respond to the defendants' request to revise, interrogatories, and requests for production, and the court granted the defendants' motion for a judgment of nonsuit on January 2, 2007.

More than a year later, on January 18, 2008, the plaintiff commenced the action underlying this appeal. The underlying action alleges, as the plaintiff noted in its brief, "the same facts and causes of action as were present in the 2004 lawsuit." The defendants filed a motion to dismiss the complaint, arguing that the plaintiff's action was time barred. The court granted the defendants' motion to dismiss on May 28, 2009, and the plaintiff subsequently appealed to this court. On appeal, this court affirmed the trial court's decision as to the vexatious litigation claims, but reversed the judgment of the trial court and remanded the case for further proceedings on the tortious interference with business expectancies claim. *PMG Land Associates*, *L.P.* v. *Harbour Landing Condominium Assn.*, *Inc.*, 135 Conn. App. 710, 719, 42 A.3d 508 (2012).[2]

On remand, the defendants filed a motion for summary judgment, arguing that the plaintiff's claim for tortious interference was time barred pursuant to General Statutes § 52-577.[3] This action was commenced on January 18, 2008; therefore, conduct prior to January 18, 2005, was outside the statute of limitations. Because the defendants' 2001 action was dismissed on May 28, 2004, the obligation to release the lis pendens arose in 2004, and, therefore, this action was time barred unless the running of the statute of limitations was tolled. The plaintiff argued that the defendants' continuing failure to release the lis pendens constituted a continuing course of conduct that tolled the statute of limitations until the lis pendens was released on June 6, 2005. The plaintiff also argued that the defendants had committed other tortious acts within the relevant time frame, and that those acts satisfied one method of establishing a continuing course of conduct for the purpose of tolling the statute of limitations. The defendants argued that, under this court's holding in *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 894 A.2d 335 (2006), aff'd, 284 Conn. 193, 931 A.2d 916 (2007), the failure to release the lis pendens constituted a single omission

that occurred when the action on which the lis pendens was premised was dismissed. The defendants also argued that the plaintiff failed sufficiently to establish that they had committed other tortious acts within the three years preceding the commencement of the plaintiff's initiation of the underlying action. The trial court agreed with the defendants and granted the motion for summary judgment. This appeal followed.

The plaintiff argues that the court improperly granted the defendants' motion for summary judgment because the statute of limitations was tolled until the defendants released the lis pendens, and because there was a genuine issue of material fact as to whether the defendants committed other tortious acts relevant to this claim within the three years prior to the initiation of the underlying action. We disagree.

We begin by setting forth the relevant standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) Id., 597.

"[I]n the context of a motion for summary judgment based on a statute of limitations special defense, [the defendants] typically [meet their] initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the plaintiff asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute. . . . Put differently, it is then incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Citation omitted; internal quotation marks omitted.) *Iacurci* v. *Sax*, 313 Conn. 786, 799, 99 A.3d 1145 (2014).

To make a claim for tortious interference, "[a plaintiff] must prove that the defendant's conduct was in

fact tortious." (Internal quotation marks omitted.) *Blake* v. *Levy*, 191 Conn. 257, 261, 464 A.2d 52 (1983). Where a tortious interference claim stems from the defendant's passive conduct, "common sense dictates that a court should inquire whether the defendant was under any obligation to do what it refrained from doing." *Downes-Patterson Corp.* v. *First National Supermarkets, Inc.*, 64 Conn. App. 417, 427, 780 A.2d 967, cert. granted, 258 Conn. 917, 782 A.2d 1242 (2001) (appeal dismissed June 25, 2002).

As the trial court properly determined, a party incurs an obligation pursuant to General Statutes § 49-8[4] to release a lis pendens when such lis pendens is rendered ineffective. Here, the lis pendens was rendered ineffective on May 28, 2004, when the action underlying the lis pendens was dismissed. See General Statutes § 52-322.[5] The defendants, therefore, breached their obligation to the plaintiff at that time. Because the plaintiff commenced the present action more than three years later, however, the plaintiff's claim was, at least on the surface, untimely. See General Statutes § 52-577.

The plaintiff argues, however, that pursuant to the continuing course of conduct doctrine, the statute of limitations was tolled until the defendants released the lis pendens on June 5, 2006, because the defendants had a continuing duty to release the lis pendens. Therefore, the plaintiff argues, the underlying action, commenced by service of process on January 18, 2008, was timely. The defendants respond that, in accordance with this court's holding in *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 94 Conn. App. 609, the failure to release the lis pendens did not did not constitute a continuing course of conduct, but was a single act that occurred on May 28, 2004. Therefore, the defendants argue, the failure to release the lis pendens did not toll the statute of limitations, and the plaintiff's claim was time barred. We agree with the defendants.

"It is axiomatic that [w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. . . . [I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) Id., 608.

In *Bellemare*, we held that the failure to release a lien

in violation of § 49-8 does not constitute a continuing course of conduct, but, rather, is a single omission that is not, without more, a violation of a continuing duty for the purpose of tolling a statute of limitations. Id., 609 ("[a]lthough it may be true that the defendant never was released of its contractual and statutory obligations to provide a release of mortgage once the debt was satisfied, its failure to provide the appropriate release constituted a single omission and not an ongoing or recurring wrongful act").[6]

Here, the defendants breached their original duty to release a lien or attachment pursuant to § 49-8. The plaintiff has not established that a special relationship existed between the parties, and, as such, has not established a continuing duty to the plaintiff as contemplated by *Bellemare*. Therefore, we agree with the trial court's determination that the defendants' failure to release the lis pendens "constituted a single omission and not an ongoing or recurring wrongful act," and, consequently, did not toll the statute of limitations. Id., 609.

The plaintiff also argues, however, that even if the failure to remove the lis pendens did not toll the statute of limitations, the defendants committed other, related tortious acts within the three years prior to the commencement of the underlying action, and, therefore, engaged in a continuing course of conduct that tolled the statute of limitations. It is "incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Internal quotation marks omitted.) *Iacurci* v. *Sax*, supra, 313 Conn. 799. In its materials in opposition to the motion for summary judgment, the plaintiff did not set forth sufficient facts to create a genuine issue as to the defendants' alleged other tortious acts, and, thus, the plaintiff has not satisfied this burden.

In its brief to this court, the plaintiff alleged that, within the relevant time period, the defendants tortiously interfered with the plaintiff's business expectancies by (1) "refus[ing] to provide the plaintiff with access [to the plaintiff's property] through most of 2005 and certainly beyond January 18, 2005," and (2) "continuously fail[ing] to negotiate in good faith with Christopher Companies up until and beyond the actual closing in 2006."[7] The record, however, does not support these allegations to the degree necessary to establish that a genuine issue of material fact exists.

The plaintiff alleges that the defendants interfered with its ability to market and sell its property by hindering access to the property. At oral argument before this court, however, the plaintiff's attorney conceded that, after the contract for sale to Christopher Companies was signed in 2003—five years before the plaintiff commenced this action—the plaintiff ceased marketing the property to other buyers. The plaintiff's attorney also

conceded that, despite alleged access issues in 2005 and 2006, "it wasn't that Christopher Companies was totally, totally barred from entering the property," but that the access issues "caused concerns and questions to arise." As the trial court pointed out, however, Tullio Bertoli, a representative from Christopher Companies, testified at his deposition that while working on the development plan for the property, he "didn't have to get on [to the property]. It did not matter to me, but when I did get on . . . I went through the front gate." He testified that he had access to the property "[a]s needed," and that when he did need to access the property "[s]omebody let me in, I think, it was mostly David Potter [a member of the board of directors of the defendant corporation]." The record does not create a genuine issue of fact as to tortious interference with the plaintiff's ability to sell its property by the defendants hindering access during the three year period prior to the commencement of this action.

The record also does not create a genuine issue of fact as to the plaintiff's allegation that the defendants engaged in delay tactics that interfered with the sale of the property to Christopher Companies while the defendants were in negotiations with Christopher Companies concerning its plan to develop condominiums on the property. When Bertoli was asked about the relationship between Christopher Companies and the defendant corporation, he testified: "I wouldn't say in my mind that it was a knock-down, drag-out adversarial [relationship], but it's the kind of common stuff that happens in every project. You always [have] issues that arise." In addition, although Patrick O'Keefe, a partner in the plaintiff, stated that, in his opinion, the defendants "fail[ed] to negotiate in good faith with Christopher Compan[ies] concerning various development issues," he also stated that "[t]he only reason the sale of the [p]roperty did not occur on or before January 15, 2004, was the failure of [the defendants] to release the lis pendens from the [p]roperty." Over the course of his eleven page sworn statement, O'Keefe repeated this opinion—that the lis pendens was the only obstacle preventing the sale to Christopher Companies—at least four times. On this record, the plaintiff has failed to establish that a genuine issue of material fact existed as to the claim that the defendants engaged in bad faith negotiations with Christopher Companies regarding its plan to develop condominiums on the property, and thereby interfered with the plaintiff's ability to sell its property.

Because the plaintiff has failed to establish a genuine issue of material fact as to whether the defendants engaged in any tortious acts within the three years preceding the plaintiff's initiation of the underlying action, the court properly granted the defendants' motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The plaintiff had previously developed phases I and II, but no longer had an interest in that realty.

[2] This court concluded that the case should be remanded because "the plaintiff has set forth allegations that, if taken as true, are sufficient to allow the plaintiff to proceed on its tortious interference with business expectancies claim in count three." *PMG Land Associates*, *L.P.* v. *Harbour Landing Condominium Assn.*, *Inc.*, supra, 135 Conn. App. 718. The complaint alleges that tortious acts had been committed within the three years prior to the commencement of this action. Id., 716.

[3] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[4] General Statutes § 49-8 (b) provides in relevant part: "The plaintiff or the plaintiff's attorney shall execute and deliver a release when . . . a lis pendens or other lien has become of no effect pursuant to section 52-326."

[5] General Statutes § 52-322 provides in relevant part: "[w]hen the estate of any person has been attached in any proceeding wherein a certificate of such attachment or a copy of the writ or proceeding is required by law to be filed in the office of the town clerk, and the plaintiff therein has received satisfaction for the plaintiff's claim, or final judgment has been rendered against the plaintiff thereon, or when for any reason such attachment has become of no effect, such plaintiff or the plaintiff's attorney, at the request of any person interested in the estate attached or in having the attachment lien removed, shall file a certificate with such town clerk that such attachment is dissolved and such lien removed." Section 52-322 is made applicable to lis pendens by General Statutes § 52-326, which states that "[t]he provisions of sections 52-322 and 52-324 shall apply, mutatis mutandis, to any lis pendens recorded according to the provisions of section 52-325 or any invalid lien sought to be discharged under section 49-51."

[6] *Bellemare* involved a mortgage rather than a lis pendens, but we see no meaningful distinction for the purpose of the issue of continuing duty.

[7] The plaintiff alleged several other ways in which the defendants tortiously interfered with the plaintiff's sale of its property, all of which occurred more than three years prior to the plaintiff initiating the underlying action. Because these claims are time barred, they cannot serve as the basis for the plaintiff's tortious interference claim, and we do not address them.