# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2820

_____

Capitol Records, Inc.; Sony BMG Music Entertainment; Arista Records LLC; Interscope Records; Warner Bros. Records Inc.; UMG Recordings, Inc.,

*Plaintiffs - Appellants*,

v.

Jammie Thomas-Rasset,

*Defendant - Appellee*,

United States of America,

*Intervenor below - Appellee*.

-------------------------------

Motion Picture Association of America, Incorporated,

*Amicus on Behalf of Appellant*,

Electronic Frontier Foundation; Internet Archive; American Library Association; Association of Research Libraries; Association of College and Research Libraries; Public Knowledge,

*Amici on Behalf of Appellee*.

_____

No. 11-2858
_____

Capitol Records, Inc.; Sony BMG Music Entertainment; Arista Records LLC; Interscope Records; Warner Bros. Records Inc.; UMG Recordings, Inc.,

*Plaintiffs - Appellees*,

v.

Jammie Thomas-Rasset,

*Defendant - Appellant*,

United States of America,

*Intervenor below - Appellee*.

------------------------------

Motion Picture Association of America, Incorporated,

*Amicus on Behalf of Appellee*,

American Library Association; Association of Research Libraries; Association of College and Research Libraries; Public Knowledge; Electronic Frontier Foundation; Internet Archive,

*Amici on Behalf of Appellant*.
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: June 12, 2012
Filed: September 11, 2012

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

This appeal arises from a dispute between several recording companies and Jammie Thomas-Rasset. There is a complicated procedural history involving three jury trials, but for purposes of appeal, it is undisputed that Thomas-Rasset willfully infringed copyrights of twenty-four sound recordings by engaging in file-sharing on the Internet. After a first jury found Thomas-Rasset liable and awarded damages of $222,000, the district court granted a new trial on the ground that the jury instructions incorrectly provided that the Copyright Act forbids making sound recordings available for distribution on a peer-to-peer network, regardless of whether there is proof of "actual distribution." A second jury found Thomas-Rasset liable for willful copyright infringement under a different instruction, and awarded statutory damages of $1,920,000. The district court remitted the award to $54,000, and the companies opted for a new trial on damages. A third jury awarded statutory damages of $1,500,000, but the district court ultimately ruled that the maximum amount permitted by the Due Process Clause of the Fifth Amendment was $54,000 and reduced the verdict accordingly. The court also enjoined Thomas-Rasset from taking certain actions with respect to copyrighted recordings owned by the recording companies.

The companies appeal two aspects of the remedy ordered by the district court. They object to the district court's ruling on damages, and they seek an award of $222,000, which was the amount awarded by the jury in the first trial. They also seek a broader injunction that bars Thomas-Rasset from making any of their sound recordings available to the public. For tactical reasons, the companies do not seek reinstatement of the third jury's award of $1,500,000. They urge instead that this

court should reverse the district court's order granting a new trial, rule that the Copyright Act does protect a right to "making available" sound recordings, reinstate the first jury's award of $222,000, and direct entry of a broader injunction. In a cross-appeal, Thomas-Rasset argues that *any* award of statutory damages is unconstitutional, and urges us to vacate the award of damages altogether.

For reasons set forth below, we conclude that the recording companies are entitled to the remedies they seek: damages of $222,000 and a broadened injunction that forbids Thomas-Rasset to make available sound recordings for distribution. But because the verdicts returned by the second and third juries are sufficient to justify these remedies, it is unnecessary for this court to consider the merits of the district court's order granting a new trial after the first verdict. Important though the "making available" legal issue may be to the recording companies, they are not entitled to an opinion on an issue of law that is unnecessary for the remedies sought or to a freestanding decision on whether Thomas-Rasset violated the law by making recordings available.

I.

Capitol Records, Inc., Sony BMG Music Entertainment, Arista Records LLC, Interscope Records, Warner Bros. Records, and UMG Recordings, Inc., are recording companies that own the copyrights to large catalogs of music recordings. In 2005, they undertook to investigate suspected infringement of these copyrights. MediaSentry, an online investigative firm hired by the recording companies, discovered that an individual with the username "tereastarr" was participating in unauthorized file sharing on the peer-to-peer network KaZaA.

During the relevant time period, KaZaA was a file-sharing computer program that allowed its users to search for and download specific files from other users. KaZaA users shared files using a share folder. A share folder is a location on the

user's computer in which the user places files—such as audio or video recordings—that she wants to make available for other users to download. KaZaA allowed its users to access other users' share folders, view the files in the folder, and download copies of files from the folder.

MediaSentry accessed tereastarr's share folder. The investigative firm determined that the user had downloaded copyrighted songs and was making those songs available for download by other KaZaA users. MediaSentry took screen shots of tereastarr's share folder, which included over 1,700 music files, and downloaded samples of the files. But MediaSentry was unable to collect direct evidence that other users had downloaded the files from tereastarr. MediaSentry then used KaZaA to send two instant messages to tereastarr, notifying the user of potential copyright infringement. Tereastarr did not respond to the messages. MediaSentry also determined tereastarr's IP address, and traced the address to an Internet service account in Duluth, Minnesota, provided by Charter Communications. MediaSentry compiled this data in a report that it prepared for the recording companies.

Using the information provided by MediaSentry, the recording companies, through the Recording Industry Association of America (RIAA), issued a subpoena to Charter Communications requesting the name of the person associated with tereastarr's IP address. Charter informed the RIAA that the IP address belonged to Jammie Thomas-Rasset. The RIAA then sent a letter to Thomas-Rasset informing her that she had been identified as engaging in unauthorized trading of music and inviting her to contact them to discuss the situation and settle the matter. Thomas-Rasset contacted the RIAA as directed in the letter and engaged in settlement conversations with the organization. The parties were unable to resolve the matter.

In 2006, the recording companies sued Thomas-Rasset, seeking statutory damages and injunctive relief for willful copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*. They alleged that Thomas-Rasset violated their

exclusive right to reproduction and distribution under 17 U.S.C. § 106 by impermissibly downloading, distributing, and making available for distribution twenty-four copyrighted sound recordings.

A jury trial was held in October 2007. At trial, Thomas-Rasset conceded that "tereastarr" is a username that she uses regularly for Internet and computer accounts. She admitted familiarity with and interest in some of the artists of works found in the tereastarr KaZaA account. She also acknowledged that she wrote a case study during college on the legality of Napster—another peer-to-peer file sharing program—and knew that Napster was shut down because it was illegal. Nonetheless, Thomas-Rasset testified that she had never heard of KaZaA before this case, did not have KaZaA on her computer, and did not use KaZaA to download files. The jury also heard evidence from a forensic investigator that Thomas-Rasset removed and replaced the hard drive on her computer with a new hard drive after investigators notified her of her potential infringement. The new hard drive did not contain the files at issue.

At the close of evidence, the district court instructed the jury that one who reproduces or distributes a copyrighted work without license infringes the copyright. The court's instructions defined "reproduction" to include "[t]he act of downloading copyrighted sound recordings on a peer-to-peer network." The court also instructed that the act of "making copyrighted sound recordings available for electronic distribution on a peer-to-peer network, without license from the copyright owners, violates the copyright owners' exclusive right of distribution, regardless of whether actual distribution has been shown." The jury found Thomas-Rasset liable for willful infringement and awarded the recording companies statutory damages of $9,250 per work, for a total of $222,000.

Thomas-Rasset moved for a new trial or, in the alternative, for a remittitur, arguing that the size of the jury's statutory damages award violated her rights under

the Due Process Clause. The United States intervened to defend the constitutionality of the statute on statutory damages, 17 U.S.C. § 504(c). The recording companies also filed a post-trial motion, seeking to amend the judgment to include an injunction enjoining Thomas-Rasset from infringing the recording companies' copyrights by "using the Internet or any online media distribution system to reproduce (*i.e.*, download) any of Plaintiffs' Recordings, to distribute (*i.e.*, upload) any of Plaintiffs' Recordings, or to make any of Plaintiffs' Recordings available for distribution to the public."

Several months later, the district court *sua sponte* raised the issue whether it erred by instructing the jury that making sound recordings available for distribution on a peer-to-peer network violates a copyright owners' exclusive right to distribution, "regardless of whether actual distribution has been shown." The parties filed supplemental briefs in which the recording companies defended the court's instruction and Thomas-Rasset argued that the court erred when it instructed the jury on the "making available" issue. After a hearing, the district court granted Thomas-Rasset's motion for a new trial on this alternative ground, holding that making a work available to the public is not "distribution" under 17 U.S.C. § 106(3). The issue whether making copyrighted works available to the public is a right protected by § 106(3) has divided the district courts. *Compare, e.g.*, *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981-84 (D. Ariz. 2008), *and London-Sire Records v. Doe 1*, 542 F. Supp. 2d 153, 176 (D. Mass. 2008), *with Motown Record Co. v. DePietro*, No. 04-CV-2246, 2007 WL 576284, at *3 (E.D. Pa. Feb. 16, 2007), *and Warner Bros. Records, Inc.*, *v. Payne*, No. W-06-CA-051, 2006 WL 2844415, at *3 (W.D. Tex. July 17, 2006).

The district court convened a second trial in June 2009, at which the recording companies produced substantially the same evidence of Thomas-Rasset's liability. At this trial, however, Thomas-Rasset attempted to deflect responsibility by suggesting for the first time that her children and former boyfriend might have done

the downloading and file-sharing attributed to the "terreastar" username. The court again instructed the jury that reproduction or distribution constituted copyright infringement. But this time, the court omitted reference to making works available and instructed the jury that "[t]he act of distributing copyrighted sound recordings to other users on a peer-to-peer network, without license from the copyright owners, violates the copyright owners' exclusive distribution right." The jury again found Thomas-Rasset liable for willful infringement, and awarded the recording companies statutory damages of $80,000 per work, for a total of $1,920,000.

Following the second trial, Thomas-Rasset filed a post-trial motion in which she argued that any statutory damages award would be unconstitutional in her case, but in the alternative that the court should reduce the jury's award either through remittitur or based on the Due Process Clause. The district court declined to rule on the constitutional issue and instead remitted damages to $2,250 per work, for a total of $54,000, on the ground that the jury's award was "shocking." The recording companies declined the remitted award and exercised their right to a new trial on damages.

A third trial was held in November 2010, and the only question for the jury was the amount of statutory damages. The jury awarded the recording companies statutory damages of $62,500 per work, for a total of $1,500,000.

Thomas-Rasset then moved to alter or amend the judgment, again arguing that any statutory damages award would be unconstitutional, but alternatively that the district court should reduce the award under the Due Process Clause. The district court, relying in part on the now-vacated decision in *Sony BMG Music Entm't v. Tenenbaum*, 721 F. Supp. 2d 85 (D. Mass. 2010), *vacated in relevant part by*, 660 F.3d 487 (1st Cir. 2011), granted Thomas-Rasset's motion and reduced the award to $2,250 per work, for a total of $54,000. The court ruled that this amount was the maximum award permitted by the Due Process Clause. The district court also entered

a permanent injunction against Thomas-Rasset, but refused to include language enjoining her from "making available" copyrighted works for distribution to the public.

The recording companies appeal the judgment of the district court, arguing that the district court erred in (1) granting a new trial based on the "making available" instruction in the first trial, and (2) holding that the Due Process Clause limits statutory damages to $2,250 per infringed work. They request that we reinstate and affirm the first jury's $222,000 award, and remand with instructions to grant an injunction prohibiting Thomas-Rasset from making the copyrighted works available to the public. Thomas-Rasset cross-appeals, arguing that even an award of the minimum statutory damages authorized by the Copyright Act would be unconstitutional.

II.

In their brief on appeal, the record companies urge this court to review the district court's order granting a new trial after the first verdict. The companies argue that the court erred by holding that an individual does not infringe a copyright holder's exclusive rights by making a copyrighted work available to the public without authorization. They argue that accepting their position on that issue would "lead to reversing the District Court's erroneous refusal to enjoin Thomas-Rasset from making Plaintiffs' copyrighted works available, but also would reinstate the first jury's $9,250-per-work verdict," for total damages of $222,000. Although the third jury's verdict awarded $62,500 per work, for a total of $1,500,000, the companies seek only the smaller amount awarded by the first jury, because they want a ruling on the legal issue whether making works available is part of the distribution right protected by the Copyright Act.

In reply, Thomas-Rasset says that she has no objection to reinstatement of the first verdict, subject to her arguments on the constitutionality of the damages. She maintains that she still disagrees with the recording companies about the meaning of "distribute" in the Copyright Act, 17 U.S.C. § 106(3), but she does not object to the relief that the companies request on appeal. She now suggests that this court should reinstate the first jury's verdict on liability (albeit without making precedent on the meaning of "distribute") and then determine whether the first damages award of $222,000 is constitutional. Thomas-Rasset is liable for willful infringement under any of the verdicts, and it suits her fine to cap the maximum possible damages at $222,000 rather than $1,500,000. Thomas-Rasset also offers to acquiesce in the entry of an injunction that forbids her to make copyrighted works available for distribution. In light of these concessions, she suggests that the issue whether making works available is part of the distribution right protected by the Copyright Act is moot.

Our response to these tactical maneuvers is to observe that this court reviews judgments, not decisions on issues. *Thompson v. Mo. Bd. of Prob. & Parole*, 39 F.3d 186, 189 n.2 (8th Cir. 1994); *see California v. Rooney*, 483 U.S. 307, 310 (1987). The record companies appeal the district court's final judgment and seek additional remedies that the district court refused to order. The entitlement of the companies to these remedies—damages of $222,000 and an injunction against making copyrighted works available to the public—are the matters in controversy. That the companies seek these remedies with the objective of securing a ruling on a particular legal issue does not make that legal issue itself the matter in controversy. Once the requested remedies are ordered, the desire of the companies for an opinion on the meaning of the Copyright Act, or for a statement that Thomas-Rasset violated the law by making works available, is not sufficient to maintain an Article III case or controversy. *Chathas v. Local 134 IBEW*, 233 F.3d 508, 512 (7th Cir. 2002); *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875-76 (7th Cir. 1987).

-10-

For the reasons set forth below, we conclude that when the district court entered judgment after the verdict in the third trial, the court should have enjoined Thomas-Rasset from making copyrighted works available to the public, whether or not that conduct by itself violates rights under the Copyright Act. We also conclude that statutory damages of at least $222,000 were constitutional, and that the district court erred in holding that the Due Process Clause allowed statutory damages of only $54,000. We therefore will vacate the district court's judgment and remand with directions to enter a judgment that includes those remedies. The question whether the district court correctly granted a new trial after the first verdict is moot.

A.

After the third trial, the district court entered an injunction that prohibits Thomas-Rasset from "using the Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiffs' Recordings, or to distribute (i.e., upload) any of Plaintiff's Recordings." The recording companies urged the district court to amend the judgment to enjoin Thomas-Rasset from making any of their sound recordings available for distribution to the public through an online media distribution system. The district court declined to do so on the ground that the Copyright Act does not provide an exclusive right to making recordings available. The court further reasoned that the injunction as granted was adequate to address the concerns of the companies. We review the grant or denial of a permanent injunction for abuse of discretion. *Fogie v. THORN Americas, Inc.*, 95 F.3d 645, 649 (8th Cir. 1996). "Abuse of discretion occurs if the district court reaches its conclusion by applying erroneous legal principles or relying on clearly erroneous factual findings." *Id*.

We conclude that the district court's ruling was based on an error of law. Even assuming for the sake of analysis that the district court's ruling on the scope of the Copyright Act was correct, a district court has authority to issue a broad injunction

-11-

in cases where "a proclivity for unlawful conduct has been shown." *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949). The district court is even permitted to "enjoin certain otherwise lawful conduct" where "the defendant's conduct has demonstrated that prohibiting only unlawful conduct would not effectively protect the plaintiff's rights against future encroachment." *Russian Media Grp., LLC v. Cable America, Inc.*, 598 F.3d 302, 307 (7th Cir. 2010) (citing authorities). If a party has violated the governing statute, then a court may in appropriate circumstances enjoin conduct that allowed the prohibited actions to occur, even if that conduct "standing alone, would have been unassailable." *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994) (internal quotation omitted).

Thomas-Rasset's willful infringement and subsequent efforts to conceal her actions certainly show "a proclivity for unlawful conduct." The recording companies rightly point out that once Thomas-Rasset makes copyrighted works available on an online media distribution system, she has completed all of the steps necessary for her to engage in the same distribution that the court did enjoin. The record also demonstrates the practical difficulties of detecting actual transfer of recordings to third parties even when a party has made large numbers of recordings available for distribution online. The narrower injunction granted by the district court thus could be difficult to enforce.

For these reasons, we conclude that the district court erred after the third trial by concluding that the broader injunction requested by the companies was impermissible as a matter of law. An injunction against making recordings available was lawful and appropriate under the circumstances, even accepting the district court's interpretation of the Copyright Act. Thomas-Rasset does not resist expanding the injunction to include this relief. We therefore will direct the district court to modify the judgment to include the requested injunction.

B.

On the question of damages, we conclude that a statutory damages award of $9,250 for each of the twenty-four infringed songs, for a total of $222,000, does not contravene the Due Process Clause. The district court erred in reducing the third jury's verdict to $2,250 per work, for a total of $54,000, on the ground that this amount was the maximum permitted by the Constitution.

The Supreme Court long ago declared that damages awarded pursuant to a statute violate due process only if they are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919). Under this standard, Congress possesses a "wide latitude of discretion" in setting statutory damages. *Id*. at 66. *Williams* is still good law, and the district court was correct to apply it.

Thomas-Rasset urges us to consider instead the "guideposts" announced by the Supreme Court for the review of punitive damages awards under the Due Process Clause. When a party challenges an award of punitive damages, a reviewing court is directed to consider three factors in determining whether the award is excessive and unconstitutional: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996).

The Supreme Court never has held that the punitive damages guideposts are applicable in the context of statutory damages. *See Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 586-88 (6th Cir. 2007). Due process prohibits excessive punitive damages because "'[e]lementary notions of fairness enshrined in our

constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.'" *Campbell*, 538 U.S. at 417 (quoting *Gore*, 517 U.S. at 574). This concern about fair notice does not apply to statutory damages, because those damages are identified and constrained by the authorizing statute. The guideposts themselves, moreover, would be nonsensical if applied to statutory damages. It makes no sense to consider the disparity between "actual harm" and an award of statutory damages when statutory damages are designed precisely for instances where actual harm is difficult or impossible to calculate. *See Cass Cnty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 643 (8th Cir. 1996). Nor could a reviewing court consider the difference between an award of statutory damages and the "civil penalties authorized," because statutory damages *are* the civil penalties authorized.

Applying the *Williams* standard, we conclude that an award of $9,250 per each of twenty-four works is not "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." 251 U.S. at 67. Congress, exercising its "wide latitude of discretion," *id*. at 66, set a statutory damages range for willful copyright infringement of $750 to $150,000 per infringed work. 17 U.S.C. § 504(c). The award here is toward the lower end of this broad range. As in *Williams*, "the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to [federal law]" support the constitutionality of the award. *Id*. at 67.

Congress's protection of copyrights is not a "special private benefit," but is meant to achieve an important public interest: "to motivate the creative activity of authors and inventors by the provision of a special reward, and to allow the public access to the products of their genius after the limited period of exclusive control has expired." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984). With the rapid advancement of technology, copyright infringement through online file-sharing has become a serious problem in the recording industry. Evidence

-14-

at trial showed that revenues across the industry decreased by fifty percent between 1999 and 2006, a decline that the record companies attributed to piracy. This decline in revenue caused a corresponding drop in industry jobs and a reduction in the number of artists represented and albums released. *See Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 492 (1st Cir. 2011).

Congress no doubt was aware of the serious problem posed by online copyright infringement, and the "numberless opportunities for committing the offense," when it last revisited the Copyright Act in 1999. To provide a deterrent against such infringement, Congress amended § 504(c) to increase the minimum per-work award from $500 to $750, the maximum per-work award from $20,000 to $30,000, and the maximum per-work award for willful infringement from $100,000 to $150,000. *Id*.

Thomas-Rasset contends that the range of statutory damages established by § 504(c) reflects only a congressional judgment "at a very general level," but that courts have authority to declare it "severe and oppressive" and "wholly disproportioned" in particular cases. The district court similarly emphasized that Thomas-Rasset was "not a business acting for profit, but rather an individual consumer illegally seeking free access to music for her own use." By its terms, however, the statute plainly encompasses infringers who act without a profit motive, and the statute already provides for a broad range of damages that allows courts and juries to calibrate the award based on the nature of the violation. For those who favor resort to legislative history, the record also suggests that Congress was well aware of the threat of noncommercial copyright infringement when it established the lower end of the range. *See* H.R. Rep. 106-216, at 3 (1999), 1999 WL 446444, at *3.[1]

_____

[1]According to the House report in 1999:

By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works. The

Congressional amendments to the criminal provisions of the Copyright Act in 1997 also reflect an awareness that the statute would apply to noncommercial infringement. *See* No Electronic Theft (NET) Act, Pub. L. No. 105-147, § 2(a), 111 Stat. 2678 (1997); *see also* H.R. Rep. 105-339, at 5 (1997), 1997 WL 664424, at *5.

In holding that any award over $2,250 per work would violate the Constitution, the district court effectively imposed a treble damages limit on the $750 minimum statutory damages award. The district court based this holding on a "broad legal practice of establishing a treble award as the upper limit permitted to address willful or particularly damaging behavior." Any "broad legal practice" of treble damages for statutory violations, however, does not control whether an award of statutory damages is within the limits prescribed by the Constitution. The limits of treble damages to which the district court referred, such as in the antitrust laws or other intellectual property laws, represent congressional judgments about the appropriate maximum in a given context. They do not establish a *constitutional* rule that can be substituted for a different congressional judgment in the area of copyright infringement. Although the United States seems to think that the district court's ruling did not question the constitutionality of the statutory damages statute, the district court's approach in our view would make the statute unconstitutional as applied to a significant category of copyright infringers. The evidence against Thomas-Rasset demonstrated an

---

advent of digital video discs, for example, will enable individuals to store far more material than on conventional discs, and at the same time, produce perfect secondhand copies. . . . Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action. In light of this disturbing trend, it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct.

aggravated case of willful infringement by an individual consumer who acted to download and distribute copyrighted recordings without profit motive. If an award near the bottom of the statutory range is unconstitutional as applied to her infringement of twenty-four works, then it would be the rare case of noncommercial infringement to which the statute could be applied.

Thomas-Rasset's cross-appeal goes so far as to argue that *any* award of statutory damages would be unconstitutional, because even the minimum damages award of $750 per violation would be "wholly disproportioned to the offense" and thus unconstitutional. This is so, Thomas-Rasset argues, because the damages award is not based on any evidence of harm caused by her specific infringement, but rather reflects the harm caused by file-sharing in general. The district court similarly concluded that "statutory damages must still bear *some* relation to actual damages." The Supreme Court in *Williams*, however, disagreed that the constitutional inquiry calls for a comparison of an award of statutory damages to actual damages caused by the violation. 251 U.S. at 66. Because the damages award "is imposed as a punishment for the violation of a public law, the Legislature may adjust its amount to the public wrong rather than the private injury, just as if it were going to the state." *Id*. The protection of copyrights is a vindication of the public interest, *Sony Corp. of Am.*, 464 U.S. at 429, and statutory damages are "by definition a substitute for unproven or unprovable actual damages." *Cass Cnty. Music Co.*, 88 F.3d at 643. For copyright infringement, moreover, statutory damages are "designed to discourage wrongful conduct," in addition to providing "restitution of profit and reparation for injury." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952).

Thomas-Rasset highlights that if the recording companies had sued her based on infringement of 1,000 copyrighted recordings instead of the twenty-four recordings that they selected, then an award of $9,250 per song would have resulted in a total award of $9,250,000. Because that hypothetical award would be obviously excessive and unreasonable, she reasons, an award of $222,000 based on the same

amount per song must likewise be invalid. Whatever the constitutionality of the hypothetical award, we disagree that the validity of the lesser amount sought here depends on whether the Due Process Clause would permit the extrapolated award that she posits. The absolute amount of the award, not just the amount per violation, is relevant to whether the award is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Williams*, 251 U.S. at 67. The recording companies here opted to sue over twenty-four recordings. If they had sued over 1,000 recordings, then a finder of fact may well have considered the number of recordings and the proportionality of the total award as factors in determining where within the range to assess the statutory damages. If and when a jury returns a multi-million dollar award for noncommercial online copyright infringement, then there will be time enough to consider it.

\* \* \*

For the foregoing reasons, we conclude that the recording companies are entitled to the remedies that they seek on appeal. The judgment of the district court is vacated, and the case is remanded with directions to enter a judgment for damages in the amount of $222,000, and to include an injunction that precludes Thomas-Rasset from making any of the plaintiffs' recordings available for distribution to the public through an online media distribution system.

_____