******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# YOUR MANSION REAL ESTATE, LLC *v.* RCN CAPITAL FUNDING, LLC
## (AC 43922)

Bright, C. J., and Moll and Clark, Js.

*Syllabus*

The defendant, a mortgage servicing company, appealed from the trial court's judgment in favor of the plaintiff, a property owner, finding that the defendant violated the mortgage release statute (§ 49-8) by failing to provide a timely release of the plaintiff's mortgage. The defendant received a payoff of the mortgage from the plaintiff, along with a demand that specifically cited and quoted the statutory damages provisions of § 49-8 (c). *Held*:

1. The defendant could not prevail on its claim that the trial court erred in failing to dismiss the plaintiff's complaint on the ground that the plaintiff did not have standing because the plaintiff did not incur actual damages, and, therefore, was not aggrieved; the defendant acknowledged that it had received a proper demand under § 49-8 and failed to provide the required release to the plaintiff, the plaintiff was entitled to a release after satisfying the mortgage, it made the proper demand for the release, the defendant received that demand, and the defendant failed to provide the release within the statutory sixty days, and, pursuant to the plain language of the statute, the plaintiff was a statutorily aggrieved party.

2. The trial court did not abuse its discretion in sustaining the plaintiff's objection to certain questions the defendant asked of its corporate witness concerning whether there existed a common practice whereby borrowers recontact the defendant if they have not timely received a requested § 49-8 (c) release, as the trial court correctly determined that this evidence was not relevant; the defendant's attempt to shift the responsibility to the plaintiff for the defendants' own failure to comply with § 49-8 was unmoving, the fact that the defendant admitted that it customarily fails to comply with § 49-8 did not mean that its responsibility to comply then shifted to the mortgagor to repeatedly remind the defendant that it had a statutory obligation, and, whether others provided the defendant with such a reminder, was of no relevance to whether the defendant, in fact, had failed to meet its statutory obligation to fulfill its legal duty within sixty days of the plaintiff's proper request.

3. The defendant could not prevail on its claim that the trial court improperly rejected its special defense in which it alleged that the plaintiff had a duty to mitigate, but failed to mitigate its statutory damages, as the statutory damages provision of § 49-8 was enacted as a means to curb what the legislature considered to be a long-standing problem in the mortgage industry; § 49-8 is coercive and provided the mortgagee with an incentive to fully comply in a timely manner, and to require the plaintiff to "remind" the mortgagee that it had a legal obligation to comply with § 49-8 (c) by providing the plaintiff with a release, after already properly requesting that it provide such a release, would run counter to the intent of the statute and would encourage the abuses the legislature sought to curb through its enactment.

4. There was no merit to the defendant's claim that § 49-8 (c) was unconstitutional as applied to this case on the ground that it permitted the court to levy an excessive and punitive fine that is grossly in excess of the plaintiff's actual damages, which were none: the excessive fines clause of the eighth amendment to the United States constitution did not apply to this civil case between private parties, and any income tax the plaintiff might owe on the statutory damages it received did not constitute a fine directly imposed on the defendant by the government; moreover, contrary to the defendant's claim, § 49-8 did not violate the due process clause of the fourteenth amendment in that it permitted a statutory award of "punitive" damages that was greatly in excess of the plaintiff's actual damages, as the legislative history of § 49-8 revealed that the purpose of the statute was to curb one of the abuses in the mortgage industry, namely, delays in providing timely releases of mortgages, the

defendant had full control of its statutory liability because the statutory damages were assessed on a weekly basis for each week of noncompliance and the defendant knew exactly what its exposure was and the simple step it needed to take to limit its liability.

Argued April 12—officially released August 3, 2021

*Procedural History*

Action to recover damages for the defendant's failure to timely release a certain mortgage, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Hon. Alfred J. Jennings, Jr.*, judge trial referee; judgment for the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*Matthew B. Gunter*, for the appellant (defendant).

*Raymond G. Heche*, for the appellee (plaintiff).

*Opinion*

BRIGHT, C. J. Following a trial to the court, the defendant, RCN Capital Funding, LLC, appeals from the judgment of the trial court rendered in favor of the plaintiff, Your Mansion Real Estate, LLC, in an action brought pursuant to General Statutes § 49-8 (c). On appeal, the defendant claims that the trial court erred in (1) not dismissing the plaintiff's complaint on the ground that the plaintiff did not have standing because it admitted that it had incurred no actual damages and, therefore, was not aggrieved, (2) not permitting the defendant to introduce testimony concerning whether it was common practice for borrowers to contact the defendant if they had not received a § 49-8 (c) release, (3) rejecting the defendant's first special defense in which it alleged that the plaintiff had failed to mitigate its damages, and (4) rejecting the defendant's second and third special defenses in which it claimed that § 49-8 (c) was unconstitutional because it allows for punitive damages and excessive fines in violation of the eighth and fourteenth amendments to the United States constitution. We affirm the judgment of the trial court.

The following facts, which were found by the trial court and which are uncontested on appeal, and procedural history inform our review. "Prior to November 4, 2015, the plaintiff . . . was and had been, since March 14, 2014, the owner of the premises known as 90 Reut Drive, Stratford, Connecticut 06614 ('premises'). The premises were encumbered by (1) a mortgage deed from the plaintiff to [the defendant] on March 14, 2014, in the original amount of $112,000 recorded in the Stratford land records . . . and (2) . . . a collateral assignment of leases and rentals from the plaintiff to the defendant dated March 14, 2014, recorded in the Stratford land records . . . . On November 4, 2015, the plaintiff sold and conveyed title to the premises to a new owner. On or about October 20, 2015, prior to [the] sale of the premises, the Law Offices of Raymond G. Heche, as counsel representing the plaintiff as seller, requested a payoff number of the mortgage from the defendant. On October 20, 2015, the defendant sent to . . . Heche's office a payoff letter stating that the payoff number of the mortgage through November 6, 2015, would be $118,911.96. On November 4, 2015, the date of the closing of the sale of the premises . . . Heche, as counsel for the plaintiff as seller of the premises, remitted by overnight mail to the defendant at its office at 75 Gerber Road East, South Windsor, Connecticut 06074, a bank check . . . payable to the defendant in the payoff amount of $118,911.96 together with a copy of the October 20, 2015 payoff letter. [The] November 4, 2015 letter to the defendant also requested that the defendant 'upon receipt of said payoff provide to . . . Heche's office in proper form a release of the mortgage and a release of the collateral assignment.' [The] letter

further advised:

" 'Kindly be advised that [§] 49-8 (c) of the . . . General Statutes states that a mortgagee who fails to deliver and release within [sixty] days from the request for the same, "shall be liable . . . at the rate of $200 for each week after the expiration of such [sixty] days or in an amount equal to the loss sustained, whichever is greater."'

"On March 26, 2018, when the requested releases had not been provided . . . Heche sent a certified mail letter to the defendant . . . with another copy of his November 4, 2015 letter and the payoff check, advising the defendant that the requested releases had still not been provided, and reminding the defendant again of the [sixty] day deadline of . . . § 49-8 (c) which 'had long expired.' The March 26, 2018 letter, sent more than two years after the expiration of the original [sixty] day deadline from November 4, 2015, gave the [d]efendant ten days to provide the requested releases together with statutory damages of $5000 plus attorney's fees of $850 to avoid suit under [§] 49-8 (c). When the requested releases had still not been received, the plaintiff, through . . . Heche, commenced this action by complaint dated April 26, 2018, seeking statutory money damages under [§] 49-8 (c), plus costs and reasonable attorney's fees. . . .

"The defendant filed its amended answer and special defenses on July 28, 2019, admitting in the answer that it had received the full payoff of $118,911.26 with . . . Heche's transmittal letter of November 4, 2015, and that it had failed to provide a proper release of mortgage at the time this action was commenced, and leaving the plaintiff to its proof of the allegation that the plaintiff had sold the premises on November 4, 2015, and that the plaintiff was an aggrieved party entitled to damages under [§] 49-8 (c). . . . The plaintiff filed [a] reply . . . denying the allegations of all special defenses. The pleadings were closed on November 14, 2018, and the case was assigned for a nonjury trial . . . on September 11, 2019. . . .

"The parties at trial presented a corrected stipulation of fact dated September 12, 2019, by which they agreed that the court could find the following facts established without presentation of evidence:

" '1. On November 4, 2015, the plaintiff . . . sold the premises . . . .'

" '2. As of April 26, 2018, the defendant . . . had not furnished or recorded a release of mortgage related to [the premises].'

" '3. On June 8, 2018, the defendant recorded a release of mortgage to [the premises] as well as a termination of collateral assignment of leases and rents . . . .'

" '4. The plaintiff has not suffered any demonstrable

loss with respect to [the] [d]efendant's delay in furnishing or recording the release of mortgage.'

" '5. The plaintiff, prior to sending its demand dated March 26, 2018, but after it had sent the payoff funds, had not, whether through its principal or its counsel, contacted the defendant by any medium of communication.'

" '6. An affidavit, through counsel, has not been filed on the land records of Stratford . . . pursuant to . . . § 49-8a, in order to release the mortgage on [the premises].'

"[On the basis of] the corrected stipulation, the court finds the facts recited therein to be proven."

On the basis of these facts, the court, in a thorough memorandum of decision, concluded, inter alia, that the plaintiff was statutorily aggrieved, that the defendant's amended special defenses had no merit, and that "the damages requested by the plaintiff in the amount of $5000, [were] authorized by [§] 49-8 (c) in that more than twenty-five weeks from the January 4, 2016 sixty day deadline flowing from the November 4, 2015 letter requesting a release of mortgage had passed without a release being provided. The statutory weekly damages of $200 per week therefore reached the maximum statutory damages of $5000." Accordingly, the court rendered judgment in favor of the plaintiff in the amount of $5000, plus costs and reasonable attorney's fees, as set forth in the statute. This appeal followed.

I

The defendant first claims that the trial court erred in not dismissing the plaintiff's complaint on the ground that the plaintiff did not have standing, as was demonstrated through its concession that it had incurred no actual damages; therefore, it was not aggrieved. The defendant argues that "§ 49-8 (c) requires the party bringing an action pursuant to it to be aggrieved. Only an aggrieved party, therefore, has standing to bring the claim." The plaintiff argues, inter alia, that it, without question, was statutorily aggrieved.[1] We agree with the plaintiff.

"If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed

to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . . Statutory aggrievement [however] exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation. . . .

"In order to determine whether a party has standing to make a claim under a statute, a court must determine the interests and the parties that the statute was designed to protect. . . . Essentially the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. . . . [Stated differently, the] plaintiff must be within the zone of interests protected by the statute." (Citation omitted; internal quotation marks omitted.) *McKay* v. *Longman*, 332 Conn. 394, 409–10, 211 A.3d 20 (2019).

Additionally, we are mindful that matters of statutory construction are governed by General Statutes § 1-2z, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Matters concerning statutory construction are reviewed de novo. See *Connecticut Housing Finance Authority* v. *Alfaro*, 328 Conn. 134, 140–41, 176 A.3d 1146 (2018) (questions of statutory construction present issues of law subject to de novo review).

Section 49-8 provides: "(a) The mortgagee or a person authorized by law to release the mortgage shall execute and deliver a release to the extent of the satisfaction tendered before or against receipt of the release: (1) Upon the satisfaction of the mortgage; (2) upon a bona fide offer to satisfy the mortgage in accordance with the terms of the mortgage deed upon the execution of a release; (3) when the parties in interest have agreed in writing to a partial release of the mortgage where that part of the property securing the partially satisfied mortgage is sufficiently definite and certain; or (4) when the mortgagor has made a bona fide offer in accordance with the terms of the mortgage deed for such partial satisfaction on the execution of such partial release.

"(b) The plaintiff or the plaintiff's attorney shall execute and deliver a release when an attachment has become of no effect pursuant to section 52-322 or section 52-324 or when a lis pendens or other lien has become of no effect pursuant to section 52-326.

"(c) The mortgagee or plaintiff or the plaintiff's attorney, as the case may be, shall execute and deliver a release within sixty days from the date a written request for a release of such encumbrance (1) was sent to such mortgagee, plaintiff or plaintiff's attorney at the person's last-known address by registered or certified mail, postage prepaid, return receipt requested, or (2) was received by such mortgagee, plaintiff or plaintiff's attorney from a private messenger or courier service or through any means of communication, including electronic communication, reasonably calculated to give the person the written request or a copy of it. The mortgagee or plaintiff shall be liable for damages to any person aggrieved at the rate of two hundred dollars for each week after the expiration of such sixty days up to a maximum of five thousand dollars or in an amount equal to the loss sustained by such aggrieved person as a result of the failure of the mortgagee or plaintiff or the plaintiff's attorney to execute and deliver a release, whichever is greater, plus costs and reasonable attorney's fees."

In this case, the plaintiff contends that our consideration of whether it was aggrieved should be guided by the plain language of § 49-8 as analyzed by this court in *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 602, 894 A.2d 335 (2006), aff'd, 284 Conn. 193, 931 A.2d 916 (2007). The defendant, although acknowledging that *Bellemare* runs counter to its claim that the plaintiff is not aggrieved because it did not suffer actual damages, argues that this court's discussion of aggrievement in *Bellemare* is mere dicta. We agree with the plaintiff.

In *Bellemare*, this court discussed whether the plaintiff's § 49-8 claim sounded in contract or in tort for statute of limitations purposes. Id., 597–605. As part of its analysis, this court considered that the plaintiff in that case had sought to recover damages for violation of "a duty annexed to the mortgage by law . . . ." Id., 601. We held that, "even though § 49-8 allows the aggrieved party to recover actual damages, the statute does not require that the aggrieved party suffer actual damages in order to recover. . . . [I]t is apparent that the right vested in mortgagors by § 49-8 is to exact a penalty on a mortgagee who fails, on proper demand, to provide a release of mortgage within the statutorily prescribed time. Because the wronged party is entitled to an award of damages irrespective of whether there has been a showing of actual damages, the statute best can be understood as a coercive means to penalize those who violate its prescriptions. . . . Because § 49-8 authorizes the court to compensate a plaintiff for the breach of this legal duty through an award of either actual or punitive damages, it fits squarely within the general definition of a tort action, as one founded on the violation of a statutory duty." Id., 602; see also

*Jackson* v. *Pennymac Loan Services, LLC*, 205 Conn. App. 189, 200–201, A.3d (2021) (allegation that defendant failed to provide release of mortgage within sixty day statutory time period following plaintiff's proper demand is sufficient to demonstrate plaintiff's standing for purposes of § 48-9 (c)). Because this court's conclusion in *Bellemare* that the statute did not require a showing of actual damages was central to its holding that a claim under § 48-9 (c) sounds in tort, the conclusion was not dicta, and it is binding in the present case.

The defendant in the present case acknowledges that it received a proper demand under § 49-8 and that it failed to provide the required release to the plaintiff. Under the statute, that is all that is required for the plaintiff to establish statutory aggrievement: it was entitled to a release after satisfying the mortgage, it made proper demand for the release, the defendant received that demand, and the defendant failed to provide the release within the statutory sixty days. See *Jackson* v. *Pennymac Loan Services, LLC*, supra, 205 Conn. App. 205. Pursuant to the plain language of the statute, as already interpreted by this court in *Bellemare* and in *Jackson*, the plaintiff is a statutorily aggrieved party. See *Jackson* v. *Pennymac Loan Services, LLC*, supra, 205; *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 94 Conn. App. 602.

## II

The defendant next claims that the trial court erred in sustaining the plaintiff's objection to questions asked of the defendant's corporate witness, Angelica Mako, concerning whether there exists a common practice whereby borrowers recontact the defendant if they have not timely received a requested § 49-8 (c) release. The defendant argues that we should employ a plenary standard of review to its claim because "[t]he trial court's conclusion that 'whether something is commonly done or not doesn't import legal obligation' is simply wrong" and that this ruling had an adverse impact on its special defense regarding the plaintiff's failure to mitigate damages. The plaintiff argues that the court properly exercised its discretion when it sustained the plaintiff's objection, and that any alleged error was harmless because, as the defendant acknowledges, the sought-after testimony came in through other witnesses.[2] We conclude that the court did not abuse its discretion in sustaining the plaintiff's objection on the ground that the sought-after testimony had no relevancy.

The defendant cites to the following colloquy:

"[The Defendant's Counsel]: In the event that a mortgage release had not been done when it should have, was it common or routine for like a borrower or an attorney or a title company or somebody to call—

"[The Plaintiff's Counsel]: Objection, Your Honor.

"The Court: Let him finish the question. . . .

"[The Defendant's Counsel]: Was it—was it common or routine for somebody such as a borrower or a title company or an attorney to call or contact [the defendant] in some way—

"A: Yes.

"[The Defendant's Counsel]: —to ask for a release?

"The Court: Don't answer, please.

"[The Plaintiff's Counsel]: Too vague. It's vague.

"The Court: I'll sustain the objection. Whether something is commonly done or not doesn't import legal obligation. Sustained."

"A trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was . . . a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *Gianetti* v. *Norwalk Hospital*, 304 Conn. 754, 786, 43 A.3d 567 (2012).

"[E]vidence is admissible only if it is relevant. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) *Wahba* v. *JPMorgan Chase Bank, N.A.*, 200 Conn. App. 852, 864, 241 A.3d 706 (2020), cert. denied, 336 Conn. 909, 244 A.3d 562 (2021). "Evidence is relevant when it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . As it is used in our code,[3] relevance encompasses two distinct concepts, namely, probative value and materiality. . . . [M]ateriality turns upon what is at issue in the case, which generally will be determined by the pleadings and the applicable substantive law. . . . What is in issue is determined by the pleadings . . . . Once the pleadings have been filed, the evidence proffered must be relevant to the issues raised therein." (Citation omitted; footnote added; internal quotation marks omitted.) *Johnson* v. *Board of Education*, 130 Conn. App. 191, 198, 23 A.3d 68 (2011), appeal dismissed, 310 Conn. 302, 77 A.3d 137 (2013).

In the present case, the plaintiff alleged that the defendant failed to comply with the mandate set forth in § 49-8 (c) that it timely provide to the plaintiff a release. Whether other similarly situated individuals or companies frequently ask the defendant a second time, or a third time for that matter, to perform its *statutory obligation* is irrelevant to whether it, in this instance,

had performed its statutory obligation. The defendant's attempt to shift the responsibility to the plaintiff for the defendant's own failure to comply with our law is unmoving. The fact that the defendant admits that it customarily fails to comply with § 49-8 does not mean that its responsibility to comply with the law then shifts to the mortgagor to repeatedly remind the defendant that it has a statutory obligation. Whether others provide the defendant with such a reminder is of no relevance to whether the defendant, in fact, had failed to meet its statutory obligation to fulfill its legal duty within sixty days of the plaintiff's proper request. Accordingly, we agree with the trial court that this evidence was not relevant.

### III

The defendant also claims that the trial court erred in rejecting its first special defense in which it alleged that the plaintiff had a duty to mitigate, but failed to mitigate its statutory damages. It argues that the court improperly ruled that the plaintiff had no "legal duty to remind [the defendant] to issue a release of the mortgage." The plaintiff argues that the court properly held that § 49-8 (c) does not require that the plaintiff attempt to mitigate its damages by reminding the defendant that it has failed to comply with the statutory mandate to provide a timely release. The plaintiff further argues that "[§] 49-8 (c) *is* the reminder to the defendant . . . ." (Emphasis in original.) We wholeheartedly agree with the plaintiff.

Whether a plaintiff has a duty to mitigate statutory damages to which it is entitled pursuant to § 49-8 (c) presents a legal question. Accordingly, our review is plenary. See *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 94 Conn. App. 598.

In *Bellemare*, this court explained that the statutory damages set forth in § 49-8 (c), although sounding in tort rather than contract, are similar to a penalty, enacted by our legislature against a mortgagee, who, on proper demand, fails to comply with the statute by providing a release of mortgage. Id., 600–601. Section 49-8 "best can be understood as a coercive means to penalize those who violate its prescriptions." Id., 602. As this court further explained in *Bellemare*, "in 1986, during the hearings to amend § 49-8a, the cousin of § 49-8, Representative William L. Wollenberg noted the 'constant problem in the real estate [world] with mortgage releases . . . . When it comes time to sell a house or any real estate a release of that mortgage is necessary. . . . What has developed is an extreme difficulty in getting out of state mortgage companies and financial people . . . . [t]o . . . give you the pay off, let alone a formal release of the mortgage for the land records.' 29 H.R. Proc., Pt. 11, 1986 Sess., pp. 416768.

"In 1989, § 49-8 was amended in Public Acts 1989,

No. 347, § 18, 'An Act Concerning Mortgage Brokers and Mortgages Servicers and Establishing a Home Buyer's Bill of Rights,' which, inter alia, increased the penalty due from a mortgagee who failed to provide a timely release of mortgage to a mortgagor. See 32 H.R. Proc., Pt. 29, 1989 Sess., pp. 10,312–20; 32 H.R. Proc., Pt. 30, 1989 Sess., pp. 10,408–39. Then, in 1995, § 49-8 was amended as part of 'An Act Concerning Release or Satisfaction of a Mortgage Lien.' Public Acts 1995, No. 95-102, § 1. The stated purpose of 'An Act Concerning Release or Satisfaction of a Mortgage Lien' was to 'revise the procedure for the release or satisfaction of a mortgage lien by increasing incentives to assure lenders comply with laws requiring releases and by enhancing the remedies and options available to mortgagors and attorneys when lenders fail to comply.' . . . Raised Committee Bill No. 990, January Sess. 1995, p. 9. Accordingly, the legislative history and *statutory scheme of § 49-8 establish that the statute was enacted and continues not only to protect property owners, but it has a more general purpose of enhancing the marketability of titles and facilitating economic intercourse in deeded transactions.* See id.; Conn. Joint Standing Committee Hearings, Banks, 1979 Sess., pp. 283–84; 29 H.R. Proc., Pt. 11, 1986 Sess., pp. 4166–68." (Emphasis altered.) *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 94 Conn. App. 604–605.

The statutory damages provision of § 49-8 was enacted as a means to curb what the legislature considered to be a longstanding problem in the mortgage industry. See id. The statute is coercive and provides the mortgagee with an incentive to fully comply in a timely manner. See id. We conclude that to require the plaintiff to "remind" the mortgagee that it has a legal obligation to comply with § 49-8 (c) by providing the plaintiff with a release, after already properly requesting that it provide such a release, would run counter to the intent of the statute and would encourage the abuses the legislature sought to curb through its enactment.[4] Accordingly, we conclude that this claim is without merit.

## IV

The defendant's final claim is that the trial court erred in rejecting its second and third special defenses in which it claimed that § 49-8 (c) was unconstitutional as applied in this case because it allowed for *excessive fines and punitive damages* that are grossly in excess of actual damages, in violation of the eighth and fourteenth amendments to the United States constitution. The defendant's argument, set forth in its appellate brief, is not a model of clarity. At times, the defendant appears to argue that the statutory damages provision of § 49-8 (c) is unconstitutional on its face and, at other times, it specifically states that it is claiming that § 49-8 (c) is unconstitutional *only* as applied to this particular

case. Nevertheless, the defendant's special defenses clearly allege that § 49-8 (c) is unconstitutional only as applied in this case. We conclude that the defendant's claim is without merit.

"Determining the constitutionality of a statute presents a question of law over which our review is plenary. . . . It [also] is well established that a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . . The court will indulge in every presumption in favor of the statute's constitutionality . . . . Therefore, [w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear. . . . In evaluating the constitutionality of a statute, moreover, we will construe the statute in such a manner as to save its constitutionality, rather than to destroy it. . . . In doing so, we may also add interpretative gloss to a challenged statute in order to render it constitutional. In construing a statute, the court must search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Citations omitted; internal quotation marks omitted.) *Boisvert* v. *Gavis*, 332 Conn. 115, 143–44, 210 A.3d 1 (2019).

The defendant first argues that § 49-8 (c) is unconstitutional as applied to this case because it permitted the court to levy, what essentially amounts to, an excessive and punitive fine that is grossly in excess of the plaintiff's actual damages, which were none. The defendant contends that the United States Supreme Court "wrongly decided" *Browning-Ferris Industries of Vermont, Inc.* v. *Kelco Disposal, Inc.*, 492 U.S. 257, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989) (*Browning-Ferris*), a case in which the court firmly held that the excessive fines clause of the eighth amendment was meant to limit the sovereign from improperly employing its prosecutorial power and that it "does not apply to awards of punitive damages in cases between private parties." Id., 259–60. The defendant requests that we not follow *Browning-Ferris*. Alternatively, the defendant argues that "to the extent [*Browning-Ferris*] requires the government to be a recipient or at least share in the proceeds of a penalty award . . . then the requirement *is* met by the state of Connecticut's (like the federal government's) collection of income tax on any punitive damages award." (Emphasis in original.) We conclude that the defendant's arguments border on frivolity.

The eighth amendment to the Unites States constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." In *Browning-Ferris*, the United States Supreme Court held that "the [e]xcessive [f]ines

[c]lause was intended to limit only those fines directly imposed by, *and payable to*, the government." (Emphasis added.) *Browning-Ferris Industries of Vermont, Inc.* v. *Kelco Disposal, Inc.*, supra, 492 U.S. 268; see also *Paroline* v. *United States*, 572 U.S. 434, 456, 134 S. Ct. 1710, 188 L. Ed. 2d 714 (2014). We are bound by these decisions and conclude that the excessive fines clause of the eighth amendment does not apply to this civil case between private parties. Furthermore, any income taxes the plaintiff might owe on the statutory damages it receives do not constitute a fine *directly imposed* on the defendant by the government. In fact, a holding to the contrary would render *Browning-Ferris* meaningless because, as the defendant notes, all such awards are taxable.[5]

The defendant also argues that, under the facts of this case, § 49-8 (c) violated the due process clause of the fourteenth amendment to the United States constitution because it permitted a statutory award of "punitive damages" that was greatly in excess of the plaintiff's actual damages. The defendant urges the application of the *Gore* factors, which is the test employed by the trial court in this case. See *BMW of North America, Inc.* v. *Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996) (directing courts to consider three guideposts when reviewing punitive damage awards: "[1] the degree of reprehensibility of the [defendant's misconduct]; [2] the disparity between the harm or potential harm suffered by [the plaintiff] and [the] punitive damages award; and [3] the difference between [the punitive damages awarded by the jury] and the civil penalties authorized or imposed in comparable cases"). We conclude that *Gore* is not applicable to this case because the statutory damages available under § 49-8 are not punitive damages for purposes of *Gore*. See generally *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 91 n.10, 93–97, 881 A.2d 139 (2005) (when legislature has not expressly provided for award of punitive damages, provision allowing for statutory double damages is not equivalent to punitive damages); see also *In re Marriage of Chen*, 354 Ill. App. 3d 1004, 1022, 820 N.E.2d 1136 (2004) ("Unlike the inherent uncertainty associated with punitive damages, [the relevant statute at issue] provides employers with exact notice of the [$100 per day] penalty they will face for failing to comply with a support order. Indeed, employers receive personal notice of their duties to withhold and pay over income, as well as the penalty for failing to do so, through service of the income withholding order. While [the employer] characterizes the penalty as 'excessive' compared to the amount actually owed, the penalty complained of is $100 per day, and it is the employer that controls the extent of the fine."). We further conclude that, although our analysis differs from that of the trial court, the court correctly held that the application of the statutory damages provision of § 49-8 (c)

did not violate the defendant's right to due process of law.

As explained in Class Action Reports: "Punitive damages and statutory damages are fundamentally different. In *Gertz* v. *Robert Welch, Inc.*, [418 U.S. 323, 350, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974)] the United States Supreme Court explained that punitive damages 'are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.' Statutory damages, on the other hand, not only are subject to limits established by the legislature, but they are at least partly (if not principally) designed to provide compensation to individuals where actual damages are difficult or impossible to determine. Because of these differences, two of the *Gore* guideposts—the disparity between the harm and potential harm suffered and the damages awarded, and the difference between the damages and the civil penalties authorized or imposed in comparable cases—cannot even be assessed. Statutory damages are awarded in lieu of actual damages, and the damages already reflect the legislative judgment of the appropriate amount of damages for the prohibited conduct.

"Moreover, the underlying constitutional concerns articulated in *Gore* . . . and related cases, are essentially procedural; i.e., that the defendant must have fair notice of the potential damages that could be assessed, and that the jury's discretion in awarding punitive damages is not unlimited. In the case of statutory damages, the terms of the statute put potential defendants on notice of the conduct triggering the right to statutory damages, and of the potential exposure. In addition, the trier of fact's discretion is already limited by the range set forth in the operative statute. For these reasons, a number of courts have refused to apply the holdings of *Gore* [and related cases] . . . in the context of statutory damages. Other courts, while not expressly distinguishing *Gore* and its progeny, have nonetheless relied on a different line of cases—beginning with the Supreme Court case of *St. Louis*, [*Iron Mountain & Southern Railway Co.* v. *Williams*, 251 U.S. 63, 40 S. Ct. 71, 64 L. Ed. 139 (1919)]—to decide the constitutional question." (Footnotes omitted.) S. Larson & M. Friel, "The Legacy of Ratner v. Chemical Bank:[6] Aggregate Statutory Damages in the Class Action Context," 28 Class Action Reports (May-June 2007). We agree with this analysis and conclude that our consideration of the defendant's due process claim is guided by the United States Supreme Court's decision in *Williams*.

In *Williams*, the Arkansas legislature had enacted a statute "regulating rates for the transportation of passengers between points within the [s]tate, [which provided that] any railroad company that demands or collects a greater compensation than the statute prescribes is subjected 'for every such offense' to a penalty of 'not

less than fifty dollars, nor more than three hundred dollars and costs of suit, including a reasonable attorney's fee,' and [which gave] the aggrieved passenger . . . a right to recover the same in a civil action." *St. Louis, Iron Mountain & Southern Railway Co.* v. *Williams*, supra, 251 U.S. 63–64. The court explained: "The provision assailed is essentially penal, because [it is] primarily intended to punish the carrier for taking more than the prescribed rate. . . . True, the penalty goes to the aggrieved passenger and not the [s]tate, and is to be enforced by a private and not a public suit. But this is not contrary to due process of law; for, as is said in *Missouri Pacific* [*Railway*] *Co.* v. *Humes*, 115 U.S. 512, 523, [6 S. Ct. 110, 29 L. Ed. 463 (1885)], 'the power of the [s]tate to impose fines and penalties for a violation of its statutory requirements is coeval with government; and the mode in which they shall be enforced, whether at the suit of a private party, or at the suit of the public, and what disposition shall be made of the amounts collected, are merely matters of legislative discretion.' Nor does giving the penalty to the aggrieved passenger require that it be confined or proportioned to his loss or damages; for, as it is imposed as a punishment for the violation of a public law, the legislature may adjust its amount to the public wrong rather than the private injury, just as if it were going to the [s]tate." (Citations omitted.) *St. Louis, Iron Mountain & Southern Railway Co.* v. *Williams*, supra, 66.

The court further explained: "That [the due process] clause places a limitation upon the power of the [s]tates to prescribe penalties for violations of their laws has been fully recognized, but always with the express or tacit qualification that the [s]tates still possess a wide latitude of discretion in the matter, and that their enactments transcend the limitation only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." Id., 66–67.

As to the specific statutory penalty in *Williams*, the court explained: "It is commonly known that carriers are not prone to adhere uniformly to rates lawfully prescribed and it is necessary that deviation from such rates be discouraged and prohibited by adequate liabilities and penalties, and we regard the penalties prescribed as no more than reasonable and adequate to accomplish the purpose of the law and remedy the evil intended to be reached. . . . When the penalty is contrasted with the overcharge possible in any instance it of course seems large, but, as we have said, its validity is not to be tested in that way. When it is considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established passenger rates, we think it properly cannot be said to be so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." (Cita-

tion omitted; internal quotation marks omitted.) Id., 67.

We are guided further by the more recent case of *Sony BMG Music Entertainment* v. *Tenenbaum*, 719 F.3d 67 (1st Cir. 2013), which also relied on *Williams* and found *Gore* inapplicable to a private claim for statutory damages. In *Tenenbaum*, the defendant had downloaded and distributed copyrighted music, and the plaintiff brought a civil suit against him for statutory damages, pursuant to the Copyright Act, 17 U.S.C. § 101 et seq., and for injunctive relief. Id., 68–69. The jury awarded the plaintiff $22,500, which was 15 percent of the statutory maximum award, for each of the defendant's thirty violations, for a total award of $675,000. Id., 69. The trial court, in reliance on *Gore*, reduced the total award to $67,500 after concluding that the original award violated the defendant's right to due process of law. Id., 69. The United States Court of Appeals for the First Circuit reversed the judgment of the trial court, concluding that *Williams*, rather than *Gore*, applied to the facts of the case, and it remanded the matter to the trial court. Id. On remand, the trial court, relying on *Williams*, reinstated the original $675,000 jury award. Id., 69–70. On appeal from that new judgment, the First Circuit explained why *Williams* and not *Gore* applied to that case. Id., 70–71.

Specifically, the First Circuit explained: "*Gore* . . . address[ed] the related but distinct issue of when a jury's award of *punitive damages* is so excessive that it violates due process. See [*BMW of North America, Inc.* v.] *Gore*, [supra], 517 U.S. 574. In *Gore*, the [c]ourt, animated by the principle that due process requires that *civil defendants receive fair notice of the severity of the penalties their conduct might subject them to*, id., identified three 'guideposts' for a court's consideration of whether a punitive damage award is so excessive that it deprives a defendant of due process: (1) the degree of reprehensibility of the defendant's conduct, [id., 575–80], (2) the ratio of the punitive award to the actual or potential harm suffered by the plaintiff, [id., 580–83], and (3) the disparity between the punitive award issued by the jury and the civil or criminal penalties authorized in comparable cases, [id., 583–85].

"Here, the [D]istrict [C]ourt correctly chose to apply the *Williams* standard. By its own terms, *Williams* applies to awards of statutory damages, which the jury awarded in this case, while *Gore* applies to awards of punitive damages, which the jury did not award. *Gore* did not overrule *Williams*, and the Supreme Court has not suggested that the *Gore* guideposts should extend to constitutional review of statutory damage awards. The concerns regarding fair notice to the parties of the range of possible punitive damage awards, which underpin *Gore*, are simply not present in a statutory damages case where the statute itself provides notice of the scope of the potential award. Moreover, *Gore*'s

second and third guideposts cannot logically apply to an award of statutory damages under the Copyright Act. The second due process guidepost requires a comparison between the award and the harm to the plaintiff, but a plaintiff seeking statutory damages under the Copyright Act *need not prove actual damages. F.W. Woolworth Co.* v. *Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S. Ct. 222, 97 L. Ed. 276 (1952). The third guidepost requires a comparison between the award and the authorized civil and criminal penalties in comparable cases. Because an award of statutory damages is by definition an authorized civil penalty, this guidepost would require a court to compare the award to itself, a nonsensical result. Therefore, we conclude, as have other courts, that the standard articulated in *Williams* governs the review of an award of statutory damages under the Copyright Act. See *Capitol Records, Inc.* v. *Thomas–Rasset*, 692 F.3d 899, 907 (8th Cir. 2012); *Zomba Enterprises, Inc.* v. *Panorama Records, Inc.*, 491 F.3d 574, 587 (6th Cir. 2007)." (Emphasis altered.) *Sony BMG Music Entertainment* v. *Tenenbaum*, supra, 719 F.3d 70–71.

In the present case, to determine whether the penalty prescribed against the defendant is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable, we must examine the purpose of statutory damages under § 49-8 (c). See *St. Louis, Iron Mountain & Southern Railway Co.* v. *Williams*, supra, 251 U.S. 66–67; *Sony BMG Music Entertainment* v. *Tenenbaum*, supra, 719 F.3d 71.

As we explained in part III of this opinion, the legislative history of § 49-8 reveals that the purpose of the statute is to curb one of the abuses in the mortgage industry, namely, delays in providing timely releases of mortgages, which the legislature viewed as a serious problem. See *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 94 Conn. App. 604–605. The statute not only provides for damages for injury, but it also provides statutory damages meant to discourage wrongful conduct and to encourage mortgagees to provide timely releases. See *Sony BMG Music Entertainment* v. *Tenenbaum*, supra, 719 F.3d 71. In this case, the defendant received a payoff of the mortgage from the plaintiff, by overnight mail, along with a demand that specifically cited to and quoted the statutory damages provision of § 49-8 (c). Despite that demand, the defendant failed to provide the mandatory release of mortgage, and, nearly three years later, it faced the maximum statutory penalty of $5000, in addition to costs and reasonable attorney's fees. Furthermore, the defendant had full control of its statutory liability because the statutory damages are assessed on a weekly basis for each week of noncompliance. Unlike in *Gore*, in the present case, the defendant knew exactly what its exposure was and the simple step it needed to take to limit its liability.

Finally, as in *Tenenbaum*, the defendant here contends that the award violates its right to due process of law because the award is not tied to any actual damages suffered by the plaintiff. In rejecting such an argument in *Tenenbaum*, the First Circuit explained: "[T]his argument asks us to disregard the deterrent effect of statutory damages . . . . More importantly, the Supreme Court held in *Williams* that statutory damages are not to be measured this way: 'Nor does giving the penalty to the aggrieved [party] require that it be confined or proportioned to his loss or damages; for, as it is imposed as a punishment for the violation of a public law, the [l]egislature may adjust its amount to the public wrong rather than the private injury, just as if it were going to the state.' [*St. Louis, Iron Mountain & Southern Railway Co.* v. *Williams*, supra 251 U.S. 66]; see also [*Capitol Records, Inc.* v.] *Thomas-Rasset*, [supra, 692 F.3d 909–10] (rejecting, in a case with similar facts, the [D]istrict [C]ourt's conclusion that 'statutory damages must still bear some relation to actual damages')." (Emphasis omitted.) *Sony BMG Music Entertainment* v. *Tenenbaum*, supra, 719 F.3d 71–72. For the foregoing reasons, we conclude that the plaintiff's due process claim has no merit.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff further argues that the record establishes that it also was classically aggrieved. Because we conclude that the plaintiff was statutorily aggrieved, we need not consider this additional argument.

[2] In its appellate brief, the defendant acknowledges that the court allowed testimony of a similar nature from other witnesses: "Incongruously, the trial court allowed testimony, over [the plaintiff's] objection, which established that borrowers, title companies, or attorneys would make the further requests. . . . The trial court's exclusion of evidence as to how often or how routine such requests were made was incorrect and such testimonial evidence must be admitted and considered."

[3] As provided in our Code of Evidence: "All *relevant* evidence is admissible . . . . Evidence that is not relevant is inadmissible." (Emphasis added.) Conn. Code Evid. § 4-2. Additionally, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1.

[4] We express no opinion at this time as to whether a plaintiff has a duty to mitigate its damages when it makes a claim for actual monetary losses under § 49-8 (c).

[5] We further note that, even if the penalty were paid directly to the state, it would not constitute a fine for eighth amendment purposes. See *Seramonte Associates, LLC* v. *Hamden*, 202 Conn. App. 467, 482–83, 246 A.3d 513, cert. granted, 336 Conn. 923, 246 A.3d 492 (2021) (10 percent penalty for failing to file tax forms in timely manner not fine subject to eighth amendment).

[6] See *Ratner* v. *Chemical Bank New York Trust Co.*, 329 F. Supp. 270 (S.D.N.Y. 1971).